## Culbertson v. Ashland Cement and Construction Co.

(Decided September 29, 1911.)

## Appeal from Boyd Circuit Court.

1. Written Contract—Construction by Court, Not by Jury.—The construction of a written contract is for the court not the jury, it is error for the court to tell the jury that if the plaintiff did certain work according to the contract they should find for the plaintiff, and if it was not done according to the contract, they should find for the defendant. The court should tell the jury what the contract required the plaintiff to do and submit to them whether the plaintiff had done what was so required.

2. Acceptance of Work by Architect—Conclusiveness.—Where a contract provided that the work should be done to the satisfaction of the architect, and that his acceptance of the work and certificate of satisfaction should be conclusive evidence that the work filled the contract, it not being shown that the architect had accepted the work or given his certificate, the contractor could not show by parol that the architect had expressed satisfaction with the work to defeat a recovery on a counter claim for defects in the work.

3. Errors of Architect—Reliance Thereon—Instructions to Jury.— If errors of the architect in the specifications accompanying a contract are relied on the court should not tell the jury that a contractor is not liable for any defects due to errors in the specifications, but should tell them what was required that the contractor was not answerable for defects in the work if done as thus required.

4. Witnesses—Opinion Testimony.—A witness should not be allowed to testify that work was done according to the contract and specifications, thus giving his opinion as to the construction of the contract, but should be allowed only to give his opinion on the facts.

GEORGE B. MARTIN, S. S. WILLIS for appellant.

PROCTOR K. MALIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

The Ashland Cement and Construction Company did some work for Thomas M. Culbertson on an apartment house owned by him in Ashland, Kentucky; and brought this suit against him to recover the price, $347.59. Culbertson, by his answer, set up as a defense among other things, that the Construction Company had built for him in front of his residence a concrete sidewalk, gut-

ters, curbing, steps, coping, etc., at the contract price of
$2,100, which he had paid under an arrangement with
it that it would make good all defects then apparent in
the work or which might thereafter appear; that the
work was defective, and not as required by the contract
to his damage in the sum of $1,000, which he pleaded as
a counterclaim. The plaintiff, by its reply, controverted
the allegations of the answer as to the counterclaim;
and also pleaded that the contract provided that the
work should be done under the direction and to the sat-
isfaction of J. R. Geiske, architect, who was acting for
the defendant, and that the work was done under the di-
rection and to the satisfaction of Geiske and was by him
accepted and approved. This affirmative matter was
denied by the rejoinder. The proof on the trial by the
plaintiff was to the effect that after the work was com-
pleted, a scaly, rough condition of the finishing coat was
soon noticed; that the finishing coat upon the coping
scaled, checked and cracked; that much of the pavement
after a short time sounded hollow when struck by a ham-
mer showing it to be unsound; that much of the work of
the pavement buckled up and cracked, the surface thus
becoming very rough; that these troubles were due to
want of care in making the sand joints as required by
the contract, or by allowing the cement to get too hard
before the finishing coat was put on or a want of care in
using the sand or other improper workmanship, or want
of care in protecting the cement from frost when it was
laid. On the other hand, the proof for the defendant was
to the effect that there were no defects in the pavement
except such as were due to the want of expansion joints,
and that these were not called for in the plans and speci-
fications of the architect under which the work was done.
The court instructed the jury in substance that if the
plaintiff did not construct the work "in the manner and
in compliance with the terms of the contract of August
26, 1905, read in evidence and the plans and specifica-
tions made part thereof and in evidence," and by rea-
son thereof it was defective, they should find for the de-
fendant on his counterclaim. He also told the jury that
if the plaintiff did the work "in accordance with the con-
tract" they could not find anything for the defendant
on his counterclaim and that the plaintiff was not liable
for defects in the work "resulting from any error or
mistake in the plans or specifications for the work made
part of the contract." He refused to give an instruction

asked by the defendant which set out what the contract required the Construction Company to do, and told the jury they should find for the defendant, if it had not done these things. The jury found for the plaintiff allowing the defendant nothing on his counterclaim. The defendant appeals.

The contract between the parties for the work and the specifications which were made part of it, cover twenty pages of the transcript before us. To submit to a jury the question whether the work was done in accordance with the contract and the specifications made part of it, without construing the contract for them or telling them what facts they were to find, was to submit to the jury the law and the facts of the case. The jury do not sit as arbitrators to determine the law and facts of the controversy before them; their only function is to find the facts under the instructions of the court. A large part of the evidence before us was devoted to showing that the architect was at the work perhaps twice a week while it was going on, and that he expressed no dissatisfaction with it, and said after it was done that it was the best piece of concrete that he had ever seen. The jury may have thought when they were left to judge of the contract that this conduct of the architect required a finding by them for the plaintiff. The course of interrogation of the witnesses was evidently designed to produce this impression on the minds of the jury. The contract among other things, provided that the contractor should to the satisfaction of the architect "perform all the work mentioned in the specifications." The specifications provided that he should perform the work "in the best, most substantial, and thoroughly workmanlike manner, all the work "when delivered up to be finished and in perfect and undamaged condition." It was also provided in the specifications that when the contract was fully completed the architect was to issue "a certificate to that effect, which certificate if unconditional shall be an acceptance of the work contracted for and shall release the contractor from further responsibility on account of the work." The architect had not given this certificate; there was no attempt to plead or prove this, and this being true, the Construction Company could not claim exemption from liability for the defective work on account of anything that the architect did or said. What he said after the work was done as to the work having been properly done may be used to contradict

him as a witness, proper foundation being laid, but it is not competent for any other purpose. In lieu of the instructions which the court gave, he should have set out in an instruction what the contract required the contractor to do so far as this was material to the controversy, and should have told them that if it had not done these things, and by reason thereof the walks, steps or copings have scaled or cracked or otherwise deterioriated, or become of less value, they should find for the defendant on his counterclaim such damages as he had sustained thereby, and that the measure of damages is the difference between the value of the improvement as it was built, and its value if built as required by the contract as above set out.

It was insisted for the contractor that the trouble in the improvement was due to the want of expansion joints, and that these were not provided for in the plans and specifications. On another trial if there is similar evidence the court will tell the jury that expansion joints were not required by the specifications, and that the contractor is not liable for any defect in the work resulting from the want of expansion joints. In like manner if any other error or mistake in the plans or specifications on either branch of the case is relied on, the court will not submit to the jury whether there were errors in the plans and specifications, but will tell the jury what the plans and specifications require on the point in controversy; for the plans and specifications are a part of the contract and the construction of the contract is for the court, not the jury.

In like manner witnesses should not be allowed to testify before the jury that the work was done in accordance with the plans and specifications. They may testify how the work was done, and proper hypothetical questions embracing a proper construction of any clause of the plans or specifications may be put to them, but they should not be permitted to testify to their opinions involving both the construction of the plans and specifications and the manner in which the work was done.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.