AURELIUS v. STEWART.    (No. 9318.)

(Court of Civil Appeals of Texas. Ft. Worth.
Dec. 13, 1919. On Motion for Rehearing,
Jan. 17, 1920.)

1. APPEAL AND ERROR ⬤═1058(1)—EXCLUSION
OF EVIDENCE HARMLESS.

Exclusion of evidence was harmless where
evidence to the same purport was admitted by
the court.

2. VENDOR AND PURCHASER ⬤═232(2)—POS-
SESSION, TO BE CONSTRUCTIVE NOTICE, MUST
BE ACTUAL AND VISIBLE. -

In order for possession of premises to be
such constructive notice as to place a pros-
pective purchaser upon inquiry, as a matter of
law, as to any claim to title in the land held
by the occupant or his landlord, the possession
must be actual, open, and visible, and not mere-
ly constructive.

3. MINES AND MINERALS ⬤═58 — WHETHER
POSSESSION BY VENDEE IN UNRECORDED CON-
TRACT WAS NOTICE TO SUBSEQUENT OIL AND
GAS LESSOR HELD FOR JURY.

In an action by vendee to cancel an oil and
gas lease given by vendor, the contract of sale
not being recorded, whether or not plaintiff's
possession of the premises was such as should
have placed a subsequent lessee from the ven-
dor on inquiry *held* for the jury.

On Motion for Rehearing.

4. MINES AND MINERALS ⬤═74—ASSIGNEE OF
OIL AND GAS LEASE CHARGED WITH NOTICE
OF CLAIM OF THIRD PERSON WHERE LESSEE
HAD NOTICE.

If a lessee under an oil and gas lease had
notice prior to execution of the lease that a
third person was claiming the land under an
unrecorded contract of sale, an assignee of the
lease was charged with such notice.

Appeal from District Court, Tarrant Coun-
ty; Ben M. Terrell, Judge.

Suit by Graham Stewart against E. L.
Aurelius. Judgment for plaintiff, and de-
fendant appeals. Affirmed.

Thompson, Barwise, Wharton & Hiner, of
Ft. Worth, for appellant.
Miller & Miller, of Ft. Worth, for appellee.

BUCK, J. This suit was brought by Gra-
ham Stewart against E. L. Aurelius for the
cancellation of a certain oil and gas lease
executed by J. F. Ward, the owner, covering
a 155-acre tract of land in Young county to
the Maud Oil & Gas Company, dated January
13, 1919, and the assignment of said lease by
said Maud Oil & Gas Company to E. L. Aure-
lius, dated February 10, 1919. Plaintiff al-
leged that on November 30, 1918, said Ward
was the owner of said land, and that he and
plaintiff entered into a contract of sale which
is as follows:

"This contract made between J. F. Ward, of
Asher, Okl., and Graham Stewart of Ft. Worth,
Tex. Said Ward contracts to sell said Stewart
the tract of land owned by him in Young coun-
ty, Tex., now leased for pasture by Stewart,
consisting of about 155 acres, more or less,
purchase price to be $8 per acre; one-third
of purchase price to be paid in cash, one-third
to be paid in one year from date of deed, and
one-third to be paid in two years from date
of deed; vendor's lien notes bearing 8 per
cent. annual interest to secure such payments.
Said Ward contracts to furnish Stewart a com-
pleted abstract showing a good merchantable ti-
tle, and he is to pay 1918 taxes. Said Stewart
is placing with Ward $100 as a forfeit, and
deal is to be closed as soon as practicable.
    "[Signed] J. F. Ward, Seller.
                "Graham Stewart, Buyer.
"This November 30, 1918."

Plaintiff further alleged that on or about
January 1, 1919, said Ward refused to con-
vey the land described, and that on February
15, 1919, plaintiff instituted in the district
court of Young county a suit against Ward
to insure specific performance, that upon
trial of said cause, to wit, March 25, 1919,
judgment was entered for plaintiff peremp-
torily commanding said Ward to execute his
deed with covenants of general warranty and
upon terms mentioned in the contract of sale,
and of date November 30, 1919, and that in
compliance with said decree said Ward did
execute and deliver to plaintiff a deed as of
November 30, 1919, and according to the
terms of said contract. Plaintiff further
pleaded the execution of the lease by Ward
and wife to the Maud Oil & Gas Company,
and the assignment thereof by the said Oil &
Gas Company to defendant, that plaintiff had
been in peaceable possession of said premises
at all times since November 30, 1918, and
that his title thereto had been established as
pleaded, and that said lease and said assign-
ment constituted a cloud upon his title, which
he prayed to be removed.

Defendant pleaded his title through the
lease from Ward and wife and the assign-
ment from the Oil & Gas Company, and that
he had paid a valuable consideration for
said assignment of said lease, to wit, $5,000,
without notice of any claim, right or title in
plaintiff and was at all times an innocent
purchaser for value without notice. From a
judgment for plaintiff, under peremptory in-
structions, defendant has appealed.

The facts show that instruments were exe-
cuted by the grantors and to the grantees
named above and of the dates and for the
consideration mentioned. Ward's failure to
execute his deed to plaintiff was explained
by the statement that his wife would not
agree to such sale. The contract of sale was
not put of record, and no actual or con-
structive notice to defendant is shown unless
the possession of the premises by plaintiff
should be held constructive notice. Defendant
bought the lease and took the assignment
thereof without seeing the land, and upon

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the representations and recommendation of one Frank Miscovisky, who stated to defendant "that, if the title and everything did not stand up," defendant "was to receive the money returned," and that he would absolutely protect defendant from loss. Miscovisky made a personal visit to the land. The oil and gas lease from the Wards to the Maud Oil & Gas Company was secured from Ward by Miscovisky and Fred Ptak. Ptak at least represented the named company as counsel, and secured the lease for the benefit of the company.

The defendant gave in payment for said assignment his personal check, which in words and figures was as follows:

"Oklahoma City, Okl., Feb. 20, 1919.
"Payment in full Young County, Texas, lease. The Guaranty Bank: Pay to Maud Oil & Gas Co., or bearer, $5,000.00, five thousand and no/100 dollars.	E. L. Aurelius."

Across the face of the check at the time of its introduction in evidence was the word "Canceled," and on the back thereof was the indorsement, "Maude Oil & Gas Company, per G. S., Treas."

Aurelius testified:

"I paid $5,000 for said oil and gas lease. I paid for it with a check. The check was drawn on the Guaranty Bank. The check was dated February 20, 1919. Yes; the check has been honored, and the check has been returned to me, and I have the check."

There is evidence to show that at the time of the execution of the lease by Ward to the Oil & Gas Company said Ward exhibited to Ptak and Miscovisky a copy of his contract of sale of the land in controversy to Stewart, but Ptak expressly states that defendant was not informed of this contract, nor did he (Ptak) tell him anything about the circumstances under which the lease was secured for the oil company. Aurelius testified:

"It is not true that I did not pay anything for said lease; I paid $5,000 for the lease, and I knew nothing about Ward having bargained to transfer the lease to any one else."

In the face of this condition of the record, it can hardly be reasonably contended that a peremptory instruction was justified either on the ground that the defendant had actual notice of the contract of sale between Ward and Stewart, or that defendant did not pay a valuable consideration for the assignment of said lease. We presume that the trial court concluded that constructive notice was given of the plaintiff's claim under his contract of sale with Ward by reason of plaintiff's possession of the premises. Appellant, in his brief, apparently so construes the court's action in giving the peremptory instruction, and appellee evidently relies on the sufficiency of such possession to establish notice, and to sustain the judgment, though in his brief

he animadverts to the question of facts that the check for the lease was not given until two days after the filing of the lis pendens notice of the suit filed by plaintiff against Ward in the district court of Young county. The statement of facts does not contain the lis pendens notice. Appellee has a cross-assignment directed to the refusal of the court to permit the introduction in evidence of the lis pendens notice filed February 15, 1919, in the office of the county clerk of Young county. The defendant's objection to the introduction of this evidence was upon the ground that the lis pendens notice was not filed until February 15, while the assignment by the Maud Oil & Gas Company to defendant was of date February 10, 1919. It will be remembered that the check given in payment for the assignment is dated February 20, 1919.

[1] Notice by reason of the filing of a lis pendens notice does not become operative, except where the statute otherwise provides, until service of summons or citation. 25 Cyc. p. 1468, and authorities cited under note 62; Fielder v. Houston Oil Co., 165 S. W. 48; Humphrey v. Beaumont Irrigation Co., 41 Tex. Civ. App. 308, 93 S. W. 180, writ denied. So far as we have found from a careful examination of the record, there is no proof that citation was served in the Young county suit by Stewart against Ward prior to February 20, 1919. Hence we cannot say that the trial court erred in excluding the lis pendens notice filed in the Young county suit, and hence overruled appellee's first cross-assignment. Nor do we think appellee's second cross-assignment should be sustained, which complains of the refusal of the court to permit the plaintiff to show that the Maud Oil & Gas Company had notice of the rights of the plaintiff in the land in controversy at the time said company acquired the lease thereon from J. F. Ward and wife. In the first place, evidence to the same purport as that excluded was admitted by the court and is shown in the statement of facts. The evidence shown is to the effect that before the execution and delivery by Ward of the lease to the Maud Oil & Gas Company Ward told Fred Ptak, attorney for the company, and Frank Miscovisky, representing said company, of his contract of sale with the plaintiff, and showed to Ptak a copy of said contract. But it does not follow, because the Oil & Gas Company, through its agents, had notice of said unrecorded contract, that the defendant would be charged with such notice.

The evidence as to Stewart's possession of the premises covered by the lease in question is as follows: Stewart, during 1918 and 1919, was a cattleman residing at Ft. Worth, Tarrant county, Tex., and engaged in the cattle business in Young and Jack counties. For the year 1918 he leased the premises in question, but had no lease covering the year 1919.

This tract had no improvements on it and nobody lived on it. It was pasture land, and was inclosed by a wire fence, and was about a half mile from the residence property on plaintiff's ranch. It was a separate and distinct tract of land from the one on which plaintiff had his ranch house, where his foreman, Willis Newman, lived. Plaintiff had no lease of record for 1918 covering said tract. Newman did not testify, but plaintiff testified that he never saw defendant, but that, if the latter had applied to him concerning his (Stewart's) rights in the land in February, 1919, he would have told him of his contract with Ward to purchase it. It is not shown that the 155-acre tract was within the same inclosure as the rest of Stewart's ranch, nor even that it was adjacent thereto, nor that any cattle were grazing on it at this particular time of the year, though it was used as pasture land by Stewart during 1918.

In this state of the record, we have concluded that the court erred in directing a verdict for plaintiff. It is said in Eylar v. Eylar, 60 Tex. 315:

"It would seem that the sole office which possession performs in the matter of notice is to put a person desiring to purchase upon inquiry, and that it had no effect in determining what the inquiry shall be or of whom it shall be made."

20 R. C. L. p. 352, § 13, expresses the rule in the following language:

"It is a general rule of law that the possession of real property is a fact putting all persons on inquiry as to the nature of the occupant's claims as well as the claims of the person under whom he occupies. Possession is notice, however, of only such facts as inquiry of the occupant would naturally disclose, which usually consists in the name of his lessor, if the occupant is a tenant, and would not ordinarily include information of the facts that the lessor had sold the premises, if the occupant had not attorned to the purchaser."

[2] In order for possession of premises to be constructive notice so as to place the prospective purchaser upon inquiry, as a matter of law, as to any claim to title in the land held by the occupant or his landlord, the possession must be actual, open, and visible, and not merely constructive. As said in Tolar v. Development Co., 153 S. W. 911:

"Indeed, we do not regard fencing alone as constituting any possession whatever; it is not such an actual, open, and visible appropriation of the land as is contemplated by the law. An inclosure around a tract of land is one of the evidences of possession, and yet a tract of land might be inclosed by a fence and have improvements thereon, and still not be in possession of any one, or in the possession of parties different from those who placed the inclosure and improvements there."

In the instant case Ward, the owner, lived in Oklahoma, and his former tenant, Stew-

219 S.W.—55.

art, lived in Ft. Worth, some distance from the premises in controversy. As before stated, while it is shown that the premises were fenced, there is nothing in the evidence to show that they were so connected with the ranch of the plaintiff as to impose on a prospective purchaser, as a matter of law, the duty to make inquiry of the occupant of appellant's ranch house, in order that such purchaser might be held free from the imputation of a lack of due diligence. Nor is there any evidence in the record that Willis Newman, plaintiff's foreman, knew of the contract of sale made between plaintiff and Ward, nor that, if defendant had applied to said Newman, he would have elicited any information whatever as to the nature of the possession of the premises by the plaintiff. In fact, plaintiff's tenancy of the premises in the interim between January 1, 1919, and the filing of the suit in Young county against Ward was more in the nature of a tenancy at sufferance than by reason of any contract with the owner. Plaintiff testified that he had no rental contract for 1919, and under his contract of sale with Ward it would appear that he was not entitled to possession until title had been passed by plaintiff's attorney and deed executed by Ward, and notes executed by plaintiff, and cash consideration paid.

[3] In view of facts disclosed in the evidence, and for the reasons stated, we are of the opinion that it cannot be held as a matter of law that the character of possession, if any, of the land held by plaintiff was such notice to defendant as would deprive him of the protection of an innocent purchaser for value. Therefore appellant's single assignment is sustained, and the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[4] We conclude, after further study of this case, that we erred in reversing the judgment below. We have no reason to change our opinion as to the proof of possession, especially since the testimony concerning such possession rested entirely upon plaintiff's testimony. Carothers v. Finley, 209 S. W. 801, writ refused; Thomas v. Saunders, 150 S. W. 768; Turner v. Grobe, 24 Tex. Civ. App. 554, 59 S. W. 583; Coats v. Elliott, 23 Tex. 613; Pridgen v. Walker, 40 Tex. 136. But we believe that the judgment must be affirmed upon the proof by Ward that the Maud Oil & Gas Company had notice of the existence of the contract between Stewart and Ward when they received the lease from Ward. If they did have such notice, and the evidence as to this feature seems uncontradicted, they had notice of Stewart's claim. Therefore the Maud Oil & Gas Company had notice. If it had such notice, defendant Aurelius did take the transfer of such lease charged with such notice. National Oil &

·Pipeline Co.· v. Teel, 95 Tex. 586, 68 S. W. 979.

Therefore the judgment heretofore rendered will be set aside, and the judgment below will be in all things affirmed.

This disposition of the case does not make it necessary to further consider our ruling as to appellee's cross-assignment of error asserting error in the trial court because of a failure to admit in evidence the lis pendens notice filed. But it is proper for us to note that article 6840, V. S. Tex. Civ. Stats., reads as follows:

"Such notice of pendency shall not be deemed constructive notice, but merely a memorandum that shall refer all intending purchasers and incumbrancers to an examination of the court records and pleadings to determine whether there is in fact a lis pendens concerning the real estate in question, and it shall be effective for such purpose from the time of its filing."

This apparently makes the lis pendens no‹ tice operative from the time of its filing. But we will not consider that question further.

The judgment is affirmed in all things.