## VARNES v. DEAN.   (No. 9389.)

(Court of Civil Appeals of Texas.   Fort
Worth.   Nov. 20, 1920.   Rehearing
Denied Jan. 8, 1921.)

**1. Trial ⊂⇒350(1)—Issue held to contain mixed question of law and fact.**

Submission of an issue, "Did the lease as executed actually contain the essentials of the written agreement previously entered into between plaintiff and H., if any there was," was erroneous, as it contained a mixed question of law and fact which the jury was not competent to pass upon, where no direction was given to the jury in the charge as to what were the essentials of the written agreement alleged to have been made by plaintiff and H.

**2. Trial ⊂⇒199—Charge must submit questions of fact.**

The charge of the court must submit questions of fact solely to the decision of the jury, and should not include questions of law, which the court only is authorized to determine.

**3. Appeal and error ⊂⇒722(1)—Duplication in numbering assignments of error does not prevent consideration.**

Objection to the consideration of the fourth assignment of error, for the reason that appellant has erroneously numbered two assignments as the fourth, will not be sustained, and thereby deprive appellant of just ground of complaint.

**4. Mines and minerals ⊂⇒59—Allegation and proof of tender by lessor of rentals paid necessary in suit to rescind lease.**

In a suit to rescind an oil and gas lease for alleged fraud, plaintiff lessor must plead an offer and tender of the rentals which were paid by the defendant lessee.

**5. Mines and minerals ⊂⇒74—Assignee of right to go on land and bore for oil and gas has not rights of innocent purchaser.**

An assignee of a lease, not so worded as to constitute an interest in land, but merely giving to lessee the right to go on the land and to bore for oil and gas and surphur, and to extract such minerals, if found, from the soil, does not have the rights of an innocent purchaser for value.

**6. Mines and minerals ⊂⇒57—Oil lease held to have merely nominal consideration and to constitute merely an option.**

Where a lessee made no down payment as a consideration for execution of an oil, gas, and sulphur lease, though $300 was the recited down payment, but made the lessor's wife a present of $10 in view of her coming some distance to execute the lease, rather than have the lessee go out to her farm, the lease had only a nominal consideration, and should be considered a mere optional right to acquire an interest in the land.

**7. Mines and minerals ⊂⇒79(7)—Evidence insufficient to show payment of rental under oil lease.**

In an action to cancel an oil, gas, and sulphur lease, evidence *held* insufficient to sustain the verdict of the jury to the effect that assignee of lease paid to bank rental when due.

Appeal from District Court, Stephens County; Harry Tom King, Judge.

Suit by F. A. Dean against the Imperial Oil & Gas Company, in which Walter B. Varnes intervened.  Judgment for plaintiff, and the intervener appeals.  Reversed and remanded.

Bradley, Burns, Christian & Bradley, of Fort Worth, and Levy & Evans, of Ranger, for appellant.

Dunaway & Pearson, of Ranger, and W. H. Bledsoe and W. F. Schenck, both of Lubbock, for appellee.

BUCK, J.   Suit was instituted in the district court of Stephens county by F. A. Dean, on February 15, 1919, against the Imperial Oil & Gas Company, to cancel a certain mineral lease on land owned by the plaintiff and situated in Stephens county.   Walter B. Varnes intervened, setting up that he was the owner of the lease described in plaintiff's petition.   By his amended petition, plaintiff alleged that on or about November 26, 1918, F. J. Holmes secured a mineral lease on this land from plaintiff and his wife, and that prior to the signing of the lease said Holmes went out to plaintiff's home where they agreed on a lease of his premises, which was reduced to writing and signed by said Holmes and plaintiff and his wife.   Plaintiff further alleged that on the following Monday he and his wife went to Ranger in order to sign and execute a written lease, which said Holmes claimed was of the same tenor and effect as the written agreement signed and executed theretofore at plaintiff's home.   Plaintiff further alleged that, upon submission to him and his wife of the lease thus prepared, they were not able to understand it, and that Holmes purported to read and explain it to them, but intentionally deceived them as to its contents, and that the lease that he and his wife signed and executed was not in effect the same lease as he had theretofore signed, and it was not such a lease as he intended to make.   He further alleged that he and his wife were ignorant of legal terms and did not understand the verbiage of the second lease, and that, because of the misrepresentations of Holmes that it was in effect the same lease as he had theretofore made, he and his wife were induced to sign it.   He further pleaded that the payment of the monthly rental due on September 26, 1918, had not been paid or tendered to him, or deposited to his credit in the Farmers' & Merchants' Bank of Ranger, until after the time for such payment had expired.

The Imperial Oil & Gas Company filed its

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

disclaimer, alleging that at no time had it ever had any interest in the lease secured by F. J. Holmes.

The intervener, Walter B. Varnes, answered by a general demurrrer, certain special exceptions, and further alleged that he had purchased from Holmes the lease in controversy and had paid $1,600 therefor, and had kept up the payments of the monthly rentals of $50 a month subsequent to his purchase, and that he had paid the rental due for September, 1918, to the bank mentioned in the lease as the depository. He further pleaded that he had no knowledge of any purported fraud or false misrepresentations made by Holmes in the securing of the lease, and that he was an innocent purchaser for value.

Upon a trial of the case before a jury on special issues, the jury found:

(1) That the $50 covering the September, 1918, rent was not paid or tendered to the Farmers' & Merchants' State Bank of Ranger on or before September 26th.

(2) That no sum of money was paid to plaintiff for the execution and delivery of the lease sought to be canceled.

(3) That plaintiff and Holmes did enter into a written agreement at plaintiff's house covering the essential terms of the agreement between them, by virtue of which they were to make a formal lease contract.

(4) That witness Holmes, at the time the lease in question was drawn up and executed in the bank at Ranger, at the instance of the plaintiff, read or purported to read the same to plaintiff, and that he falsely or incorrectly read said lease to the plaintiff, omitting to read certain portions of the lease then and there executed.

(5) That the lease executed at Ranger did not contain the essentials of the written agreement previously entered into between the plaintiff and the witness Holmes.

Upon the verdict, the court entered a judgment for plaintiff, dismissing the Imperial Oil & Gas Company from the case, and canceling the lease as against intervener, W. B. Varnes, and from the judgment thus rendered the intervener has appealed.

[1, 2] By his fourth assignment, found on page 35 of his brief, the appellant urges that the court erred in submitting the eighth issue to the jury for the reason that the same submitted an issue not raised by the pleadings or the evidence, and for the further reason that the issue contained a mixed question of law and fact which the jury was not competent to pass on. This issue was as follows:

"Did the lease, as executed, actually contain the essentials of the written agreement previously entered into between plaintiff and the witness Holmes, if any there was?"

The jury answered, "No." This issue was seasonably objected to by the intervener, and the objection was overruled by the court. We think the assignment must be sustained. No direction is given to the jury in the charge as to what the essentials of the written agreement alleged to have been made by plaintiff and his wife and witness Holmes were. Nor is any issue of fact, unmixed and separate from questions of law, submitted in this issue. As to what were the essentials of the contract the court should have determined, and submitted to the jury the difference which the plaintiff alleged and which the facts tended to establish between the two instruments. A charge of the court must submit questions of fact solely to the decision of the jury, but should not include questions of law, which the court only is authorized to determine. We think this error is a material one and requires the reversal of the judgment.

[3] Appellee objects to the consideration of the fourth assignment for the reason that appellant has erroneously numbered two assignments as the fourth. We find that this is true, but are of the opinion that we ought not to sustain appellee's objections and thereby deprive appellant of what appears to be just ground of complaint.

[4] Essentially, this suit is one for rescission of the contract for alleged fraud; but plaintiff, if entitled to such rescission, was required to plead and offer a tender of the rentals which had theretofore been paid by the intervener. This he did not do, and in the event of a second trial plaintiff's petition should be amended so as to include the tender of such rentals as have been paid by the intervener, and should tender such amount in court.

[5] We are of the opinion that the appellant is not in the position of an innocent purchaser for value. The lease in this case is not so worded as to constitute an interest in the land, but merely gives to the lessee the right to go upon the land and to bore for oil and gas and sulphur, and to extract said minerals, if found, from the premises. National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, and Court of Civil Appeals opinion same case, 67 S. W. 545; Aurelius v. Stewart, 219 S. W. 863, 865. While much discussion has been indulged in by the courts and bar over the soundness and equity of the principles laid down in Pipe Line Co. v. Teel, supra, denying the assignee of the lessee the rights of an innocent purchaser for value, and while there may be some ground for the contention that the Supreme Court in Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, laid down a different rule from that asserted in Pipe Line Co. v. Teel, yet the Supreme Court in the Daugherty Case specially mentioned the Teel Case and differentiated it from the Daugherty Case in these words:

"In Oil & Pipe Line Co. v. Teel the contract was supported by only a nominal consideration other than the mere promise of the lessee to perform certain acts, but for the performance of which he was not bound. The contract was construed properly as the creation of a mere option which permitted the acquisition of an interest on performance of conditions—a mere optional right to acquire an interest in land, a character of instrument plainly distinguishable from those here presented."

[6] The evidence in this case tends to show that no down payment was made by Holmes to the plaintiff as a consideration for the execution of the lease sought to be canceled, though $300 was the recited down payment. Holmes appears to have made Mrs. Dean a present of $10 in view of her coming into Ranger to execute the lease rather than have him go out to the farm. Hence, we are constrained to hold that the lease here under consideration should be controlled by the rule laid down in the Teel Case.

[7] We are inclined to the view that the evidence is insufficient to sustain the verdict of the jury to the effect that the intervener did not, before the due time, pay into the bank at Ranger the rental for the month beginning September 26, 1918. R. L. Hunt of the bank testified that the books of the bank did not show any amount credited to the account of Dean in the month of September, and O. F. Davenport, an employé of the bank, testified that he informed Dean, on and subsequent to September 26th, that the monthly rental had not been received, but this witness further testified:

"I can't be definite as to the date the $50 sent for the ground rent on the land of F. A. Dean and wife due on or before September 26, 1918, was received by the bank. Mr. Beeman, the cashier of the bank, was holding the matter off the books until he could get Mr. Dean's receipt. After this matter was called to my attention, I notified Mr. Dean, that the check had been held up by one of the officers of the bank, pending his execution of the receipt attached, and the next time I saw Mr. Dean I explained to him that the check could have been received on time."

Appellant Varnes testified that the check for the September rental was mailed from Independence, Kansas, on September 10th, directed to the Farmers' & Merchants' Bank at Ranger, and that it usually took two or three days for such remittance to reach there and two or three to get back. That he mailed a voucher receipt with it, which came back in about four or five days.

We do not find it necessary to discuss other assignments presented, but for the reasons stated the judgment of the trial court will be reversed and the cause remanded.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes