## UNITED FIDELITY LIFE INS. CO. v. FOWLER.

### No. 10742.

Court of Civil Appeals of Texas. Dallas.
April 11, 1931.

Rehearing Denied May 2, 1931.

W. T. Henderson, D. A. Frank, and Hamilton & Hamilton, all of Dallas, for appellant.

Ernest Becker and Luther Nickels, both of Dallas, for appellee.

LOONEY, J.

Floyd L. Fowler brought this suit against the United Fidelity Life Insurance Company for the recovery of commissions, bonuses, and renewal fees earned by the sale of life insurance for defendant under three written contracts; the first dated February 11, 1922, provided for the sale of insurance in and around El Paso, Tex.; the second and third, dated respectively April 15, 1924, and October 3, 1924, provided for the sale of insurance in the city of Dallas. The contract of April 15, 1924, superseded that of February 11, 1922, and that of October 4, 1924, superseded both the former, except plaintiff was entitled to certain hang-over benefits from insurance sold under preceding contracts.

In addition to the cause of action above described, plaintiff alleged as basis for the recovery of damages, in substance, that after working the El Paso territory for more than two years and establishing a profitable agency, defendant, by persuasion, representations, and certain promises, induced him to move to Dallas, and enter into the contract of April 15, 1924; that thereafter defendant failed and refused to co-operate with him as promised, interfered with the development of the Dallas agency, then induced him to execute the contract dated October 4, 1924, with the view of ultimately getting rid of him, and did in fact finally discharge him, wherefore he sought recovery of damages, actual and exemplary.

Defendant answered by general denial, estoppel, and other special defenses, and asserted in a cross-action an indebtedness against the plaintiff.

On application of defendant, auditors were appointed to state the accounts between the parties, in due time their report was filed, to the effect that plaintiff was indebted to defendant in the sum of $3,877.75; which was duly excepted to by plaintiff and evidence heard thereon.

The case was tried to a jury, and all issues relating to plaintiff's alleged cause of action for damages were found against him; the jury also found against defendant on its cross-action, and on plaintiff's claim for earnings and compensation under the three agency contracts, the court submitted special issues, which, together with the answers of the jury, are as follows:

"Special Issue No. 3: Was the defendant indebted to the plaintiff in any amount on

April 15, 1924? Answer Yes or No. Answer: Yes.

"If you have answered Special Issue No. 3 by 'Yes,' then answer the following subsection (a): (a) How much was such indebtedness? Answer: $3133.42.

"Special Issue No. 4: Was the defendant indebted to plaintiff in any amount on June 1, 1929? Answer Yes or No. Answer: Yes.

"If you have answered Special Issue No. 4 by 'Yes,' then answer the following subsection (a): (a) How much was said indebtedness? Answer: $1944.24."

On these findings the court rendered judgment in favor of plaintiff for $5,077.66, being the aggregate of the two amounts found by the jury, from which defendant appealed.

Among other propositions urged by defendant for reversal is that the court erred in submitting special issues Nos. 3 and 4, because in order to answer same the jury were required to construe the written contracts sued upon.

Defendant objected to the submission of these issues, on the ground, among others, that the jury were required to construe and pass upon the legal effect of the pertinent provisions of these contracts.

■ The three contracts are lengthy, covering over thirty-five pages of the transcript, and the court nowhere explained their pertinent provisions, nor was any statement given as to the rights of the parties thereunder. To answer what, if in any amount, defendant was indebted to plaintiff on either of the dates named in the special issues, the jurors were necessarily required to adopt their own interpretation of the contracts, and thus to answer questions mixed with law and fact. When written obligations are not ambiguous, they must be construed by the court and not by the jury. See Allen v. Koepsel, 77 Tex. 505, 507, 14 S. W. 151; Ivey v. Williams, 78 Tex. 685, 687, 15 S. W. 163; Gulf, etc., Co. v. Malone (Tex. Civ. App.) 25 S. W. 1077; Varnes v. Dean (Tex. Civ. App.) 228 S. W. 1017, 1018; Alexander v. Tips (Tex. Civ. App.) 268 S. W. 965; Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 174; Culbertson v. Ashland Cement & Construction Co., 144 Ky. 614, 139 S. W. 792.

■ In Varnes v. Dean, supra, the court used the following language in point: "No direction is given to the jury in the charge as to what the essentials of the written agreement alleged to have been made by plaintiff and his wife and witness Holmes were. Nor is any issue of fact, unmixed and separate from questions of law, submitted in this issue. * * * A charge of the court must submit questions of fact solely to the decision of the jury, but should not include questions of law, which the court only is authorized to determine." We are of opinion that the contention of defendant in this respect presents material error, for which the judgment must be reversed.

Defendant makes the further contention that the court erred in submitting issue No. 3, because not authorized by either pleadings or evidence, and further that the finding of the jury to the effect that defendant was indebted to plaintiff in the sum of $3,133.42 on April 15, 1924, finds no support whatever in the evidence.

These contentions are so interrelated that they will be grouped and considered together. The contract dated April 15, 1924, the second contract between the parties, entered into on the removal of plaintiff from El Paso to Dallas, contains, among others, the following provisions:

"2. A new contract will be issued superseding temporarily your old contract, which new contract is attached.

"3. All settlements taken under this new arrangement whether in notes or cash, will be turned over to the company to be held as collateral to the note thus created, and the $200 per month advance above referred to.

"4. Excess funds, if any, are to be used by the company in reducing your present or old indebtedness as rapidly as possible.

"5. The new contract which is taken, and of which this is a part, is to remain effective until all indebtedness to the company has been wiped out. At that time, unless paragraph 15 is accomplished your old contract will go into full force and effect. The old contract in the interim is to remain dormant, with the exception of renewals, which will be paid so long as the qualifications required under the new contract are met. * * *

"8. This contract is to be in full force and effect for one year from date unless old accounts are wiped out prior to that time. * * *

"15. If all indebtednesses are wiped out within one year from today, old contract will be retroactive to include all business from this date.

"16. On notes that we know to be good we will discount 10% and apply on balance due the company. This is at the discretion of the Vice President & General Manager."

While the amount of plaintiff's indebtedness to defendant mentioned in these excerpts was not stated, yet the conclusions are inescapable that plaintiff was then indebted to defendant in some amount, that the parties contracted with reference to that fact, and provided for its reduction or payment from plaintiff's future earnings. In view of this admitted fact, but without an intimation as to the status of the accounts between the parties at any subsequent date, we are of opinion that plaintiff is estopped to deny that

he was indebted to defendant on April 15, 1924; therefore, the submission of the issue was not authorized, and the finding of the jury in response thereto is without evidence to sustain it.

The rule of estoppel by contract is announced in 21 C. J. 1111, § 111, as follows: "If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake." Also see 10 R. C. L. p. 799, § 111, and note to 3 L. R. A. 308.

We overrule appellant's contentions that the court erred in refusing its charges Nos. 1 and 2, requesting directed verdicts in its favor on the issues of the main suit as well as on its cross bill; the other questions raised, being subsidiary to those decided, will not be discussed.

In the interest of certainty and brevity, we respectfully suggest to the trial court the propriety of ordering a repleader by both parties, as provided by rules Nos. 2 and 29 governing district and county courts.

For the errors hereinbefore indicated, the judgment of the trial court is reversed, and the cause remanded for further proceedings.

Reversed and remanded.

### On Motion for Rehearing.

We reversed and remanded this cause on two grounds, viz.: (1) Because the court erred in failing to explain, for the guidance of the jury, the legal meaning of and the rights of the parties under the three contracts sued upon; and (2) because neither pleading nor evidence authorized the submission of special issue No. 3, and the finding of the jury, to the effect that on April 15, 1924, appellant was indebted to appellee in the sum of $3,133.42.

Appellee, in motion for rehearing, insists that appellant waived the failure of the trial court to construe the contracts, and that this court erred in reversing the cause on that ground, because appellant made no request for such instruction.

■■■ Construction of the written contracts was a question of law for the court, and not of fact for the jury; hence the court should have given all necessary explanations to enable the jury to properly pass upon the facts involved in the issues presented, and its failure so to do was, in our opinion, error. Article 2189, R. S. 1925. While it is true appellant failed to request a special charge designed to cure this defect in the court's charge, yet a timely objection pointed out the defect, which, in our opinion, was sufficient basis for reversal, whether the defect was an affirmative error, or a mere omission. Robertson v. Holden (Tex. Com. App.) 1 S. W.(2d) 570.

Appellee assails our holding to the effect that under the admitted facts appellee was estopped to deny that he was indebted to appellant on April 15, 1924, and therefore that the submission of issue No. 3 was unauthorized and the finding of the jury in response thereto was not sustained by evidence.

The trial court saw fit to submit special issue No. 3, that required the jury to answer what, if in any amount, appellant was indebted to appellee on April 15, 1924, and the jury having answered $3,133.42, we were called upon, by an appropriate assignment, to determine whether the facts justified this submission and authorized the finding. In determining the matter, we gave no consideration to pleading or evidence on other issues, for the obvious reason that, if in either respect error existed, the case would have to be reversed.

Appellee contends that the court erred in holding him estopped to deny that he was indebted to appellant on April 15, 1924; because (1) estoppel in this connection was not pleaded, (2) elements of estoppel in pais are lacking, (3) the issue was neither submitted nor requested by appellant, and (4) the question was not properly raised by an assignment.

The question, in our opinion, was properly raised in assignment No. 53a, and in assignments Nos. 61 and 62 the error of the court in rendering judgment on the verdict, because not supported by pleading or evidence, is also properly raised, and questions germane to these assignments presented in appellant's propositions Nos. 11 and 12 were also considered in this connection; therefore, the contention that the court was without jurisdiction, for want of proper assignment, is overruled.

The question we are now considering is not a defensive matter at all, but involves the right of appellee to have the judgment affirmed on the verdict of the jury, to the effect that appellant was indebted to him on April 15, 1924, in the sum of $3,133.42.

■ ■■ The phrase "estoppel by contract," employed in this connection, means no more than that a party is bound by the terms of his own contract until set aside or annulled for fraud, accident, or mistake. Estoppel by contract is not, strictly speaking, an estoppel in pais, because it lacks several of the essential elements of an estoppel in pais, but is regarded merely a form of quasi estoppel based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another. 21 C. J. 1110, § 110.

This doctrine is, in our opinion, applicable to and decisive of the question under consideration. Appellee based his right to recover upon three written contracts between himself

and appellant; these he attached as exhibits to his petition, and were by him introduced in evidence. The second contract, the one under consideration, is dated April 15, 1924, and contains the excerpts, copied in our original opinion, relative to appellee's existing indebtedness to appellant. While the amount of appellee's indebtedness to appellant at this time is not mentioned in the contracts, the existence of an indebtedness is made certain by the language employed, in fact payment of said indebtedness, as disclosed by provisions of the contract quoted, seems to have been a major consideration.

With reference to this indebtedness, appellee made the following allegations: "That at the time defendant induced plaintiff to come to Dallas, defendant claimed plaintiff was, at such time, indebted to defendant in the sum of $5,500, but that plaintiff, as a matter of fact, was only secondarily liable to defendant for said amount, as shown herein, as follows: that said indebtedness, or rather said purported indebtedness, grew out of the failure of some of the subagents appointed by plaintiff and approved and accepted by defendant in plaintiff's territory to pay the nets, that is, the defendant Company's part of the first year's premiums; that at the time of plaintiff's appointment of such subagents and each of them, such agent executed a bond to defendant Company to secure defendant Company in the payments of such nets, and such bonds completely indemnified defendant Company for each and every dollar purported to be owed by plaintiff to defendant corporation; that defendant corporation, actuated by malice, and in conformity with its scheme to breach its contractual obligations to plaintiff, failed and refused to enforce such bonds, and refused to insist or compel such sub-agents to pay such notes, but instead, charged said amounts to this plaintiff's account, claiming that this plaintiff was liable therefor; that this plaintiff was not liable and could not have been liable inasmuch as defendant corporation failed and refused to enforce the bonds running to defendant and amply and absolutely securing them in such indebtedness, but plaintiff, under pressure from defendant corporation and then too relying upon representations of defendant, and also realizing he had a valuable agency in El Paso, that he had spent large sums of money in advertising and building up such agency, and believing himself to be in a position to reap the benefit of his work in said territories and of the money and time and efforts he had spent in advertising, etc., acquiesced in defendant's charging said nets to his account; but that this was acquiesced in by plaintiff only with the understanding that this would be done for the purpose of more easily keeping the records clear, and with the distinct understanding that defendant corporation would, at some future time, do its utmost to recover such nets from such subagents and if necessary would recover same on their bonds."

The net result of the agreement, based in part on the fact of an existing indebtedness due from appellee to appellant, and the admissions of appellee in his petition, is to the effect that appellant was claiming an indebtedness of $5,500, for the payment of which appellee admitted secondary liability, and had acquiesced in the amount being charged to his account, with the understanding on the part of appellant that, at some future time, effort would be made to recover on the bonds of the subagents, who were primarily liable.

This being the undisputed state of the account as it existed on April 15, 1924, we are of opinion that the submission of special issue No. 3 and the answer of the jury were not authorized by evidence, and that the judgment, based in part thereon, is erroneous and should be set aside, unless we should presume that the trial court made other findings from evidence, in such manner as to support the judgment. We are of opinion, however, that no such presumption can be indulged, because appellee did not seek cancellation of the contract or the annulment of any of its provisions. He charged appellant with fraud, deception, etc., but not as a part of a plea seeking cancellation of the contract; but these allegations were made in support of his plea for damages. As appellee made no attempt to have the contract canceled or any of its provisions annulled, the submission of such an issue would have been unauthorized; hence we cannot presume that the court found an issue not authorized by the pleadings.

We have carefully considered all grounds urged by appellee for a rehearing, but finding no reason to change our former decision, the motion is overruled.

Overruled.