## TARWATER et al. v. DONLEY COUNTY STATE BANK et al. (No. 2540.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 4, 1925.)

1. Executors and administrators ⬤⟾439—Not necessary parties to suit by heir for conversion of her interest in estate.

If defendant bank delivered property and funds of deceased person to his son, upon depositor's forged signature, it is liable to depositor's daughter for her interest in such estate as for conversion, and the legal representatives of father's estate are not necessary parties to her suit.

2. Evidence ⬤⟾475—Opinion of witnesses as to whether person charged with forging indorsement was man likely to commit forgery and murder held improperly admitted.

In daughter's suit against bank for conversion of father's checking account and deposit certificate, by delivering same on forged indorsement to his son, where evidence was introduced tending to show that son had murdered the father, it was error to permit testimony that, in the opinion of witnesses, the son was not such a man as would murder his father and commit forgery.

3. Evidence ⬤⟾106(5)—Proof of good character and disposition, when admissible, must be confined to general reputation.

When evidence of good character and disposition is admissible, it must be confined to proof of general reputation.

4. Evidence ⬤⟾168, 271(19), 318(2)—Letters of alleged forger to bank sued for conversion, referring to letters of father, held inadmissible to prove father still living or to rebut testimony that forger murdered him.

In suit against bank for conversion of bank deposits, by delivery on forged signature of depositor, the alleged forger having since died, letters to the bank purporting to have been written by alleged forger, and referring to whereabouts of his father, held inadmissible to prove the father to be living or to rebut testimony tending to show that forger murdered him; being hearsay, secondary evidence of contents of father's letters, and self-serving declarations.

5. Evidence ⬤⟾182—Secondary evidence of letters inadmissible until existence of letters proved.

Secondary evidence of the contents of letters is inadmissible until the existence of such letters has been first shown by competent sworn testimony.

6. Evidence ⬤⟾284—Letters referring to letters of another person than writer, and to admissions against interest made therein, held not admissible, particularly where it was claimed such person was still living.

In suit against bank for conversion of deceased depositor's accounts by payment to son, alleged to have murdered him and forged his signature, letters of son to bank, containing statements that he had heard from father. who was willing to let him have certain certificate, *held* inadmissible, under the rule which admits declarations against interest by one since deceased, in the absence of other proof that deceased ever made such declarations, particularly where the bank and other defendants were contending that the depositor was not dead.

7. Evidence ⬤⟾297—Letters referring to letters of another held inadmissible under family pedigree and tradition rule where self-serving.

In suit against bank for conversion of deposits by paying same to son of depositor, charged with murdering his father and forging latter's name, letters of son, since deceased, to bank, referring to statements made in letters received from father, *held* not admissible under family pedigree and tradition rule, since it was strongly to interest of son, if he wrote letters to show that his father was not dead, and because letters gave him apparent right to collect money.

8. Appeal and error ⬤⟾511(1)—Assignment not considered where bill of exceptions not in record.

Where a proposition and contention is based upon a bill of exceptions not in the record, the assignment of error cannot be considered.

9. Evidence ⬤⟾322(3)—Mere rumor that absent person is dead or alive inadmissible to aid or rebut presumption of life.

The rule as to admissibility of hearsay evidence to prove the death of a party extends only to the general reputation in the family of such party and among his kindred; mere rumor that the absent one is dead or alive being inadmissible to aid or rebut the presumption of continued life.

10. Evidence ⬤⟾318(2)—On issue whether individual was alive, letter of brother held inadmissible as repeating mere rumors.

On the issue whether a named individual was alive or dead, letter from his brother to such person's wife, stating that he could not find brother, but had heard he was somewhere in California, *held* inadmissible as repeating mere rumor, the origin and extent of which is not shown.

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Evidence ⚖═480 — Handwriting witness need not be expert.**

A witness need not be an expert to be permitted to express his opinion as to the genuineness of the signature of another person, if he has seen the latter write and sign his name, or shows that he is acquainted with his handwriting, in which event he is qualified to express his opinion.

**12. Evidence ⚖═197 — Other authenticated signatures may be admitted for comparison of handwriting if connected with the case and not raising collateral issues.**

In proving signatures by comparison of handwriting, any other signatures admitted to be genuine or clearly shown to be authentic may be admitted for comparison by the jury, provided they are connected with the case and do not raise collateral issues.

**13. Evidence ⚖═564(2) — Writings not connected with case, signatures of which are not admittedly by the same hand as signature in dispute, held not admissible for comparison of handwriting.**

On issue of genuineness of depositor's signature to certificate of deposit, letters purporting to be written by the depositor, and other certificates and writings not connected with the controversy, and as to which no witness testified that he saw the supposed signature written, *held* inadmissible to furnish a basis for comparison of handwriting, where such signatures were not admitted to be genuine, notwithstanding witness testified as to genuineness thereof.

**14. Evidence ⚖═564(2) — Handwriting expert may not use, for comparison, writings not connected with case.**

While a handwriting expert need not be familiar with the handwriting as to which he testifies, even such expert may not use, for the purpose of comparison, signatures on papers which are not connected with the case, when objections are seasonably made, unless the objecting party has estopped himself by having previously introduced such matters in evidence.

**15. Trial ⚖═232(2) — Instruction on burden of proof in submitting special issues held error aggravated by repetition.**

In a suit against a bank for conversion of certificate of deposit, by paying same to son of depositor, who was alleged to have murdered his father and forged latter's signature, where special issues were submitted as to the genuineness of the indorsement, and as to whether the depositor was dead, and as to whether he had indorsed the deposit, it was error for the court to charge that the burden of proof was upon plaintiffs to establish their cause of action by preponderance of the evidence, in view of Rev. St. 1925, art. 2189, which limits the judge in submitting special issues to the explanation and definition of legal terms, and the error was aggravated where the court repeated such instruction in connection with each issue, thereby giving undue prominence to it.

Appeal from District Court, Donley County; R. L. Templeton, Judge.

Action by Mrs. Pearl W. Tarwater and husband against the Donley County State Bank and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Turner, Dooley & Gibson, of Amarillo, and J. R. Porter, of Clarendon, for appellants.

Cole & Simpson, of Clarendon, and Lumpkin & Trulove, of Amarillo, for appellees.

HALL, C. J. This suit was instituted by appellants, Mrs. Pearl Tarwater and her husband, against the appellees Donley County State Bank, Lillie Wofford, and her minor daughter, Jack Wofford, to recover the sum alleged to be due on a time certificate of deposit dated September 17, 1920, issued by the defendant bank in favor of J. W. Wofford in the sum of $8,000, due one year after date, with interest at 6 per cent. per annum, and to recover the further sum of $490, due upon an open checking account maintained by said J. W. Wofford in said bank, and also to recover a United States Liberty bond or its value, which it is alleged J. W. Wofford had deposited in the bank.

It is alleged, in substance, that, subsequent to the issuance of the time certificate and the deposit of said funds and Liberty bond with the defendant bank, J. W. Wofford had died intestate; that there had been no administration upon his estate, and that there was no necessity for administration; that J. W. Wofford's wife died in 1913, and the only children born to him were the plaintiff Mrs. Tarwater and one son, Jack Wofford, the husband of Lillie Wofford and the father of the minor daughter, Jack Wofford; that Jack Wofford, son of said J. W. Wofford, died intestate on or about December 25, 1921; that, at the time Jack Wofford died, he was indebted to his father, J. W. Wofford, or proportionally to the plaintiff Mrs. Tarwater, as a legal heir of J. W. Wofford, in the sum of about $25,000, which indebtedness exceeded the sums due and owing by the defendant bank to the heirs of J. W. Wofford; that the indebtedness of Jack Wofford, now deceased, being for money borrowed and received from his father, J. W. Wofford, during the latter's lifetime, had never been repaid to the said J. W. Wofford prior to the time of his death, and for such reason, plaintiffs asserted that any interest which Lillie Wofford and her minor daughter, as heirs of Jack Wofford, might have had in the amount due by said bank should be awarded to plaintiff, and should be adjudged as an offset and credit on the indebtedness which Jack Wofford owed his father, J. W. Wofford; that plaintiff had never assigned her interest in the funds sued for; that J. W. Wofford was the owner of the certificate, was entitled to the deposit and to the Liberty bond at the time of his death; that said property had not been paid or delivered to

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

any one legally entitled to receive the same at the time of J. W. Wofford's death, and no part of it had ever been received by plaintiff in settlement of her inherited share in her father's estate.

It is alleged that Jack Wofford, after the death of his father, J. W. Wofford, forged his father's name upon the time certificate of deposit, and upon such forged indorsement received the full amount due thereon; that he forged his father's name to a check on said bank for $490, which he also received; that said bank knew, or should have known by the exercise of reasonable diligence, that the signatures of J. W. Wofford were forgeries; and that it had wrongfully paid out the funds due from said bank to J. W. Wofford to Jack Wofford.

The plaintiffs prayed for judgment against the defendants, that Pearl Tarwater be adjudged solely entitled to have said funds and property, with interest thereon, and, in the alternative, that Mrs. Tarwater have judgment for her one-half interest in and to said property.

The appellees answered, alleging: First, that J. W. Wofford was not dead. Second, that his name, indorsed upon the time certificate, and signed to the check, were his true and genuine signatures; that, in the event it should be proven that J. W. Wofford was dead, and that he had not signed said certificate, then that Jack Wofford, as his son, was nevertheless entitled to the proceeds thereof, because J. W. Wofford, at the time said certificate was issued to him, had required the bank to write into the face of the certificate these words: "In case of the death of J. W. Wofford, this certificate is payable to Jack Wofford." Further, that Jack Wofford had paid his father all that he owed him, that the estate of Jack Wofford, deceased, was a necessary party to the suit, and that plaintiffs were not entitled to prosecute the suit without showing that the money received by Jack Wofford on the check and certificate were intended by his father as advances and not as a gift.

The court submitted issue No. 1 to the jury as follows:

"Is J. W. Wofford dead? Your answer should be either 'Yes' or 'No.' If your answer to question No. 1 is 'No,' then you need not answer any other question; but if your answer to said question is 'Yes,' then answer question No. 2."

The jury answered the first interrogatory "No." None of the other issues were answered. The court then rendered judgment that plaintiffs take nothing by their suit against any of the defendants.

[1] Preliminary to the consideration of the appellant's propositions, it is necessary to dispose of the appellees' contention that the estate of Jack Wofford and his legal representatives were necessary parties to the suit, and that plaintiffs would be required to exhaust their remedy against said estate before proceeding against the bank. We cannot assent to this proposition. If J. W. Wofford was dead, and the property and funds sued for were paid to and delivered by the bank to Jack Wofford upon the forged signatures of J. W. Wofford, the bank would be liable to Mrs. Tarwater for her interest in her father's estate, if in fact he was dead at that time, as for conversion, and it was not necessary for her to make the legal representatives of the estate of Jack Wofford, deceased, parties to the suit. Banco Minero v. Ross & Masterson (Tex. Civ. App.) 138 S. W. 224.

The appellants' contention in the court below, and in this court, is that Jack Wofford murdered his father, J. W. Wofford, and thereafter, by forging the signature of his father to the certificate and check, obtained the funds and property sued for.

[2,3] Under the first proposition, it is contended that, where the record contains evidence of circumstances fairly raising the inference that Jack Wofford murdered his father, it was not competent to rebut such inference by calling witnesses who testified that they did not think Jack was a man who would kill his own father and forge his name to a time certificate. Without discussing the weight of the evidence, we will say, in connection with our consideration of this and subsequent propositions to be discussed, that there was evidence which tended to show that Jack Wofford was indebted to his father in a considerable sum of money, and that the two had a quarrel or misunderstanding immediately preceding the time when Jack was suspected of having murdered his father, and that Jack was in straightened financial circumstances and then in need of funds. Other facts were introduced which appellant insists supported her contention that Jack Wofford had murdered his father. To counteract the inference to be drawn from such facts, the defendants below were permitted to ask several witnesses, in effect, whether they knew anything that would lead them to believe that Jack Wofford was a man who would murder his own father and then forge his name to a certificate of deposit, and one of the witnesses was further asked whether he would associate Jack Wofford, as known to the witness, with being a murderer and forger, to all of which evidence the appellant objected that the testimony was immaterial and irrelevant, that it was calling for the opinion and conclusion of the witnesses. The court overruled the objections, and each of the witnesses answered said questions in the negative. We think the admission of this testimony is error, and that it influenced the jury to some extent in their finding that J. W. Wofford was not dead. When evidence of good character and

disposition is admissible, such evidence must be confined to proof of the general reputation of the party assailed. The individual opinion of a witness as to the character of the subject of the injury, and what he would or would not do, is not admissible. Negociacion Agricola Y Ganadera De San Enrigue v. Love (Tex. Civ. App.) 220 S. W. 224; Brownlee v. State, 13 Tex. App. 255; Hunter v. State, 54 Tex. Cr. R. 224, 114 S. W. 124, 130 Am. St. Rep. 887; Mutual Life Ins. Co. of New York v. Hayward (Tex. Civ. App.) 27 S. W. 36.

[4-7] Over the objections of appellant, the appellees were permitted to introduce in evidence a series of letters purporting to have been written to the bank by Jack Wofford during the month of February, 1921, and another dated June 26th, presumably of the same year, in which the writer stated, in substance, that he was expecting and waiting for a letter from his father, who would help him pay his indebtedness to the bank, and further stating that he had heard from his father, who was willing to let him have the certificate for $8,000 to be used for that purpose, and, finally, in the letter of February 22d, inclosing the certificate and a check purporting to have been signed by his father, payable to Jack for the $490, on deposit. He states in the letter of June 26th that his father—

"is stuck on Western Mexico where it borders California and Arizona. I have heard from him once since I sold my place. He was at Loma Vista, and was going from there to Needles. He might help you some if he has not tied up in something somewhere."

The bank's purpose in introducing these letters from Jack Wofford was manifestly to rebut the inference of the death of the father, J. W. Wofford, which might arise from the evidence introduced by Mrs. Tarwater, and to justify its action in paying Jack Wofford the money then in its hands. For the purpose of proving that J. W. Wofford was alive, the evidence was unsworn hearsay testimony twice removed. In them Jack asserted, in substance, that he had received letters from his father authorizing him to collect from the bank the sums evidenced by the certificate and the check, which the letters say the father had sent him. If Jack had been alive, testifying at the trial, the best evidence rule would have required him to produce his father's letters, or, as a predicate for his evidence as to their contents, would have required him to account satisfactorily for their nonproduction before giving evidence of their contents. There is nothing in the record to indicate that the bank's officials ever saw the letters of J. W. Wofford, which Jack's letters say he received from his father, nor is there any testimony by any one that an effort had been made to find the original letters of the father, referred to.

The admission in evidence of the statements in Jack's letters as to what the father's letters contained violates both of the rules which exclude hearsay and secondary evidence, and they were not admissible under any exception to either of said rules. Aside from Jack's unsworn statements contained in the letters, concerning which he could not be cross-examined, there is no proof whatever that he ever received any such letters from his father, and secondary evidence of the contents of the father's letters is inadmissible until the former existence of them had been first shown by competent sworn testimony. 22 C. J. 988, § 1237; Village Mills Co. v. Houston Oil Co. of Texas (Tex. Civ. App.) 186 S. W. 785; Land v. Dunn (Tex. Civ. App.) 226 S. W. 801; Hunter v. Hanson, 151 Ill. App. 446. Even though the purported statements of the father were against his interest, secondary proof that he had made them would not be admissible where the fact of the making of the statements was directly involved, since such fact was a material and not a collateral issue. Sanders v. Lane (Tex. Com. App.) 227 S. W. 946. At the time the letters were written by Jack, the bank and his other creditors were pressing him for settlement of his indebtedness to them, and the letters show he was not able to pay without help from his father. They were, for this reason, self-serving, and for the further reason that he was suspected of having murdered his father, and the motive for his doing so was shown. It was also shown that the relation between J. W. Wofford on the one hand, and Jack and his wife on the other were not cordial, and this was given by Jack as the reason why his father left Jack's home so abruptly, leaving his suit case, clothing, and other personal effects there. The purported statements of J. W. Wofford, to the effect that Jack could have the certificate and money for his own use, are not admissible under the rule which admits declarations against interest made by one since deceased, because no one testified that he ever made such declarations, and, besides, the bank and the other defendants are contending that J. W. Wofford is not dead. Conyer et al. v. Burckhalter et al., 275 S. W. 606; Wolfe v. Wilhelm (Tex. Civ. App.) 146 S. W. 216. The letters were not admissible under the family pedigree and tradition rule, because it was strongly to the interest of Jack, if he really wrote the letters to the bank, to show that his father was not dead, and because they gave him the apparent right to collect the money of which he was sorely in need at that time. Byers v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760; Thompkins v. Hooker (Tex. Civ. App.) 200 S. W. 193; Turner v. Sealock, 21 Tex. Civ. App. 594, 54 S. W. 358; Lewis v. Bergess, 22 Tex. Civ. App. 252, 54 S. W. 609.

[8] The fifth proposition and the conten-

tion thereunder is based upon bill of exception No. 36, and, as we find no such bill in the record, this assignment of error cannot be considered.

[9, 10] The rule as to the admissibility of hearsay evidence to prove the death of a party extends only to the general reputation in the family of such party and among his kindred. Metropolitan Life Ins. Co. v. Lyons, 50 Ind. App. 534, 98 N. E. 824. Mere rumor that the absent party is dead or alive should not be received in evidence to aid or abut the presumption of life. Kennedy v. Modern Woodmen of America, 243 Ill. 560, 90 N. E. 1084, 28 L. R. A. (N. S.) 181. The court admitted, over appellant's objections, a letter from T. C. Wofford, the brother of J. W. Wofford, to Mrs. Jack Wofford, which was dated at Muleshoe, Tex., December 30, 1921, after T. C. Wofford had returned from Jack's funeral at Silverton, in which the writer said:

"I could not find Brother Wesley [J. W. Wofford] and have not heard from him yet; heard he was in California somewhere, but could not locate him."

It will be observed that the letter does not state that he had heard that J. W. Wofford was in California from any member of the family, or that the fact that he was in California was a matter of general repute. He was repeating mere rumor, the origin and extent of which is not shown, and no general reputation to that effect is shown, either by his letter or his oral testimony while on the stand. For this reason the letter was not admissible. Bradley v. Modern Woodmen of America, 146 Mo. App. 428, 124 S. W. 69; Houston City Street Railway v. Richart (Tex. Civ. App.) 27 S. W. 920. In its effort to prove that the signatures of J. W. Wofford, indorsed on the certificate and on the $490 check, were genuine, the appellees were permitted by the court, over appellant's objections, to introduce a letter which purports to have been written by J. W. Wofford November 10, 1918, to the bank, referring to a note for $2,000, signed by Bourland and presumably payable to J. W. Wofford, and which, the letter indicates, was held by the bank for collection. T. C. Wofford testified that in his opinion the letter was in the handwriting of his brother, J. W. Wofford. This letter was handed to the jury for examination and comparison. The court further permitted five other certificates of deposits of various dates, indorsed with the name of J. W. Wofford, which had been previously issued to him and thereafter surrendered to the bank, to be introduced in evidence and given to the jury as a basis of comparison of the handwriting upon them with the signatures indorsed on the certificate of deposit in question and the check. With these was another letter to the bank, written by J. W. Wofford, relating to business in no way connected with this controversy. No witness

testified that they saw J. W. Wofford sign either of the letters, nor was T. C. Wofford shown to be qualified as a witness to testify as to the genuiness of the signatures. The appellants did not admit that the signatures upon any of these documents or letters were genuine.

[11-13] A witness need not be an expert, as that term is usually understood, before he will be permitted to express his opinion as to the genuineness of the signature of another party. If he has seen the party write and sign his name, or shows that he is acquainted with such party's handwriting, the witness is qualified to give his opinion. Joffre v. Mynatt (Tex. Civ. App.) 240 S. W. 319; Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536; Stone v. Moore (Tex. Civ. App.) 48 S. W. 1097. The evidence introduced was not authenticated by any such witness. In proving signatures by comparison of handwriting, any other signatures admitted to be genuine or clearly shown to have been written by the party may be admitted for the purpose of comparison by the jury, provided they are connected with the case and do not raise collateral issues. Barnes v. Barnes (Tex. Civ. App.) 261 S. W. 485; Campbell v. Campbell (Tex. Civ. App.) 215 S. W. 134. It is not shown that the checks and letters had been previously filed in the case.

In discussing the admissibility of extrinsic documents for the purpose of comparison by the court or jury, it is said, in Texas State Bank of Fort Worth v. Scott (Tex. Civ. App.) 225 S. W. 571:

"The decisions on the subject are conflicting. In a number of states it seems to be recognized that writings which are admitted to be genuine, although not pertinent to any other issue in the case, may be admitted in evidence for the purpose of determining by comparison whether a particular signature in question is genuine or forged. See R. C. L. p. 993, § 180. One of our earliest cases on the subject is that of Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315. In that case the suit was upon a promissory note, alleged by the pleadings of defendant to have been forged. The plaintiff offered to submit to the jury other notes and signatures of the parties to the note in controversy to prove by comparison the genuineness of the signature to the note sued upon. Such other notes were objected to on the ground that they were not admitted to be genuine, were not papers connected with the cause, and that the jury should not be permitted to decide by comparison of writings. The objections were overruled, and the papers submitted to the jury with other evidence in the case. Our Supreme Court in disposing of the question said, among other things, that 'the most satisfactory testimony of handwriting, where the party alleged to have executed the instrument is incompetent to testify, is a witness who saw the instrument executed and is able to identify it. The next best testimony is that of witnesses who have seen the party, whose writing is in controversy, write, or have had access to or possession of his writings, so as to impress the character of the writing upon the mind, and

are enabled to form an opinion by comparing the impression of the writing on their minds with that which may be submitted for their examination; and, while a comparison is made of the impression on the mind with the paper submitted for examination, it is clear that this is not such a comparison as is referred to, when it has been held that it was not competent to prove handwriting by comparison.' "

While one of the bank officials identified the signatures of the instruments offered for the purpose of comparison, and may have been qualified to give his opinion, the fact that the instruments were foreign to any issue in the case would, under the rule just quoted, exclude them as evidence. Brin v. Gale (Tex. Civ. App.) 135 S. W. 1133; Cook v. First National Bank (Tex. Civ. App.) 33 S. W. 998.

[14] While it is not necessary for a handwriting expert witness to be familiar with the handwriting of a party (Bell v. Hutchings [Tex. Civ. App.] 41 S. W. 200), the rule seems to be settled in Texas that even an expert may not use, for the purpose of comparison, signatures on papers which are not connected with the case when objections are seasonably made, unless the objecting party has estopped himself by having previously introduced such papers in evidence. Wade v. Galveston, etc., Ry. (Tex. Civ. App.) 110 S. W. 84, 88 (writ of error refused); Talbot v. Dillard, 22 Tex. Civ. App. 360, 54 S. W. 407; Cook v. First National Bank (Tex. Civ. App.) 33 S. W. 999. The Supreme Court has, however, held that, where the complaining party did not object in the trial court, and where he is estopped by himself having introduced the irrelevant documents, the judgment will not be reversed because an expert was permitted to use them for the purpose of comparison. Smyth v. Caswell, 67 Tex. 567, 4 S. W. 851; Wagoner v. Ruply, 69 Tex. 700, 7 S. W. 80; Kennedy v. Upshaw, 64 Tex. 411. But, as stated, the appellants did not admit their genuineness, nor did they offer the instruments in evidence, and there is therefore no estoppel.

By their remaining propositions, the appellants attack the charge of the court. These propositions will all be considered together.

[15] The court charged the jury twice that the burden of proof was upon the plaintiffs to establish their cause of action by a preponderance of the evidence, thereby giving undue prominence to it, which constitutes error, even if this was a proper case in which a charge upon the burden of proof should be given.

The court submitted special issues, inquiring whether the name of J. W. Wofford, appearing upon the back of the certificate of deposit, and signed to the check for $490, were forged; inquiring whether J. W. Wofford were dead—whether J. W. Wofford indorsed the certificate of deposit, and whether he drew the check for $490 in February or March, 1921, payable to Jack Wofford; and, in connection with each of said issues, charged that the burden of proof was upon the plaintiffs to establish the affirmative of the issues, and that, if plaintiffs failed to do so, they should answer such issues in the negative.

The pleadings in the case presented the issues of the death of J. W. Wofford, the genuineness of the signatures upon the certificate and check, and whether such signatures were forgeries, and both parties introduced evidence sustaining their respective theories. The evidence was entirely circumstantial and opinion evidence. This being the nature of the case, it was improper for the court to charge upon the burden of proof as to either of the issues. The Supreme Court said, in Blum v. Strong, 71 Tex. 321, 6 S. W. 167, where the issue was whether an attachment was wrongfully sued out:

"While it is a rule of law, as well as logic, that the burden is on the party holding the affirmative of an issue, it is not believed to be necessary to give it in the charge to a jury in every case. A jury is to pass upon all the evidence in the record, without regard to whether the plaintiff or defendant has introduced any particular fact or facts; and it doubtless sometimes happens that the plaintiff's evidence is of itself insufficient to authorize a verdict in his behalf, but the defendant comes to his relief, and introduces evidence which, when taken together with that introduced by the plaintiff, will justify the jury in then rendering a verdict for the plaintiff, and vice versa."

The propriety of giving a charge in such cases is further disapproved by the Supreme Court in Stooksbury et al. v. Swann, 85 Tex. 563, 22 S. W. 963. There the issue was the genuineness or forgery of an ancient instrument, where evidence was introduced pro and con by both parties. Judge Stayton said:

"In cases in which evidence is introduced by the respective parties, tending to prove and to disprove the issues of fact involved in the cause, occasion does not arise for declaration upon whom the burden of proof rests; for the question then becomes merely one of preponderance of evidence, which is for the decision of the jury, under all the evidence introduced, whether this be direct or circumstantial. In such cases a charge upon the burden of proof is more likely to mislead than to give a jury a correct view of their duties."

In this case appellants insisted that J. W. Wofford was dead, while appellees' contention is that he was alive, even at the time of the trial. The appellees insisted that the signatures of J. W. Wofford referred to were genuine, which implied, of course, that he was alive, and there was circumstantial evidence tending to sustain their theory, since it was shown that on two other occasions he had abruptly left his home without explana-

tion and remained away for some time without communicating with any one. On the other hand, persuasive evidence was introduced by the appellants which tended to show a motive on the part of Jack Wofford to kill his father, and this, with the father's failure to communicate with any one, or to carry his personal effects with him when he left the home of Jack Wofford, and contradictory evidence with regard to the circumstances under which he left, and whether he and Jack went to the hogpens or to town, and subsequent statements and conduct of Jack and his wife, all tending to sustain the appellants' theory. The death and the forgery could not have been established by direct evidence; therefore the case is simply one of where the jury should answer each issue according to the preponderance of the evidence, without any charge from the court as to the burden of proof. In cases of this character submitted upon special issues, a charge upon the burden of proof as to any particular issue is held to be in violation of that provision of R. S. 1925, art. 2189, which limits the charge of the court in submitting special issues to the explanation and definition of legal terms, since it indicates to the jury what the result of their finding upon any issue will be. Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647; J. M. Guffey Petroleum Co. v. Dinwiddie (Tex. Civ. App.) 182 S. W. 444. The proper practice in such cases is further discussed in Kuehn v. Kuehn (Tex. Civ. App.) 259 S. W. 290, Frank v. Feinberg (Tex. Civ. App.) 256 S. W. 944, and the numerous cases which have cited and followed the Blum and Stooksbury Cases by the Supreme Court.

For the errors indicated, the judgment is reversed, and the cause is remanded.