**HEWITT et al. v. BUCHANAN et al.**
(No. 312.)

Court of Civil Appeals of Texas. Eastland.
June 17, 1927.

**1. Action ⊚⇒59—Permitting subcontractor to occupy position of plaintiff in consolidated suit was discretionary, where he had burden to prove erection of building according to specifications.**

Where building owners and contractor sued subcontractor, his surety and materialmen, for alleged defective work and material used in building, and action thereon was consolidated with subcontractor's suit for extras against contractor and his surety, even though subcontractor had assigned payments due to his surety, since he had burden to prove erection of building according to plans and specifications, permitting him to occupy position of plaintiff in consolidated suit was discretionary.

**2. Trial ⊚⇒215—Submission of special issue which amounted to a general charge was error.**

Where building owner and contractor suit against subcontractor and materialmen, alleging defective workmanship and material, was consolidated with subcontractor's suit against contractor for extras furnished, submission of issue whether subcontractor had performed contract according to terms thereof and changes made by agreement which constituted a general charge was error.

**3. Appeal and error ⊚⇒882(12)—Error in submitting main charge whether subcontractor performed contract is not presumed invited by request to charge defining substantial compliance.**

Since statutes requiring judge to prepare charge and submit it to counsel before special charges are prepared or presented are presumed to have been followed, error in submitting general charge whether subcontractor performed building contract according to specifications was not invited by defendant's request to give definition of substantial compliance in performance of contract.

**4. Appeal and error ⊚⇒231(9)—Objection that charge is general one, not authorized by statute, was sufficient.**

Where general charge was submitted in case tried on special issues, objection by defendants that charge was general was sufficient.

**5. Principal and agent ⊚⇒101(4)—Generally, architect cannot, without owner's consent, make structural change in building.**

Generally, an architect cannot, without consent of the owner, make any structural change in the building.

**6. Principal and agent ⊚⇒101(4)—Where contract empowers architect to determine proper workmanship and fit material, his directions as to manner of work is binding on owner.**

Where a building contract empowers the architect to determine what was proper workmanship and fit material, his directions as to manner of doing work and his approval as to material used are binding on owner.

**7. Contracts ⊚⇒323(3)—Submission to jury whether construction work had been performed according to written building contract was error, where expert testimony on issue thereof conflicted.**

In subcontractor's action against contractor and building owner for extras, in which owners alleged that work on building was not done according to contract, and evidence of experts as to whether contract had been complied with was conflicting, it was error to submit to jury question whether work had been done or whether performance was in accordance with written contract.

**8. Appeal and error ⊚⇒233(2)—Objection to particular matter in erroneous charge will not afford ground for reversal, where same matter in other part of charge is not objected to.**

Objection, made to a particular matter in the charge, will not afford ground for reversal, even if erroneous, where same matter occurs in other portions of charge, and is unobjected to.

**9. Appeal and error ⊚⇒233(2)—Defendants, having objected to special issue, were not required to urge objections to submission of whether contract was performed according to terms.**

Where, in action by subcontractor to recover from contractor and building owners for extras, defendants objected to charge submitting generally whether contract had been performed by plaintiff according to terms, they were not required to urge objection to charge submitting question whether work done and performance of contract had been according to written contract introduced in evidence, since objection had been overruled.

**10. Trial ⊚⇒233(3)—Generally, it is improper to refer jury to pleadings to ascertain matters of fact to be decided.**

Generally, it is not proper to refer jury to pleadings in order to ascertain matters of fact to be decided.

**11. Appeal and error ⊚⇒1064(1)—Referring jury to pleadings is reversible error, where some of matters pleaded are unsupported by evidence.**

Generally, where some of matters pleaded are not supported by evidence, referring jury to pleadings to ascertain matter of fact to be decided is reversible error.

**12. Contracts ⊚⇒346(3)—Subcontractor could not ignore part of committee finding without pleading raising issue as to correctness thereof.**

Where committee appointed by building owner, contractor, and subcontractor to check building for extra plaster and picture mould made report, subcontractor, in suit against contractor and building owner to recover for extras, could not ignore committee's finding in

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

part without pleading raising issue as to correctness of finding.

**13. Trial ⚖⇒350(4)—Special issues whether contractor was negligent should not have been submitted, where negligence was not in issue.**

In subcontractor's action against building owner and contractor for extras in erection of building, and in which defendants alleged defects in plaintiff's work on original contract, special issues as to whether there was any negligence should not have been submitted, since it was not in issue.

**14. Trial ⚖⇒350(4)—Whether subcontractor protested against quantity of cement ordered by architects was improperly submitted on issue whether changed specifications caused defects in floors.**

Where building owner and contractor alleged that subcontractor did not complete building according to plans and specifications, and in course of work a change had been made in specifications for topping cement floors, since sole question for jury was whether change, as ordered, was responsible for defects, it was error to submit question whether subcontractor protested against quantities of cement architects ordered for topping floors.

**15. Contracts ⚖⇒322(1)—Subcontractor had burden to show acts of architects in finding that floor toppings were defective were without warrant under contract.**

Where architects ordered replacement of floor coverings in office building because toppings thereof were defective, subcontractor had burden to show that acts of architects were without warrant under contract.

**16. Contracts ⚖⇒232(2)—Building owners having selected brick different from those described in contract, contractor was entitled to additional expense for laying them.**

Where building owners selected brick different from those described in contract, and thereby put additional expense on contractor, latter was entitled to recover under agreement for additional expense in laying of brick.

**17. Contracts ⚖⇒170(1)—Where contract is ambiguous, proof is admissible to show construction parties put on it.**

Where a written contract specifying kind of brick to be used in an office building was ambiguous, proof was admissible to show construction parties themselves put on it.

**18. Contracts ⚖⇒237(2)—Ambiguity in contract held sufficient consideration for building owner's promise to pay cost of extra labor in laying brick selected.**

Where building owner's testimony showed that it was understood that selection of different kind of brick from those specified in written specifications would involve additional expense for which contractor should be paid, and that owner agreed to pay extra costs incurred, such ambiguity was sufficient consideration to support building owner's promise to pay cost of extra labor required in laying brick selected.

**19. Contracts ⚖⇒322(2)—Building owner's possession not being waiver of defects, testimony that tenants paid rentals under contracts made before building was completed was inadmissible.**

Since building owners took possession of building under agreement that such act did not prejudice their rights, and hence was not a waiver of defects in building, testimony that tenants occupied building under rental contracts made with owner before building was completed was inadmissible.

**20. Contracts ⚖⇒322(2)—Witnesses ⚖⇒347—Testimony that tenant occupied building is inadmissible to show contractor did not properly complete building or to affect credibility of witness.**

Testimony that particular tenant occupies a building under a contract is inadmissible either to show contractor did not use workmanship and material required by building contract or as affecting credibility of witness.

**21. Witnesses ⚖⇒347—Plaintiffs could not cross-examine tenants testifying to defects in building as to amount of rent they paid as affecting their credibility.**

Where building owner alleged that building was not completed according to specifications, subcontractor could not cross-examine building owner's tenants, testifying as to defects in building, as to amount of rent they were paying under contract made before completion of building as affecting their credibility.

**22. Evidence ⚖⇒113(11)—Testimony of specific rental contracts were inadmissible on issue of rental value of building as a whole.**

Even though rental value was relevant on issue of value of an office building, testimony of specific rental contracts were inadmissible.

**23. Evidence ⚖⇒106(1)—Testimony of reputation of subcontractor was inadmissible.**

Where building owners alleged that building was not completed according to plans and specifications, testimony as to reputation of subcontractors was inadmissible.

**24. Mechanics' liens ⚖⇒182—Under statute, materialman has lien on building and lot necessarily connected therewith.**

Under the statute, a materialman has a lien on the building and lot of land necessarily connected therewith.

**25. Appeal and error ⚖⇒230—Improper argument, injecting inflammatory and prejudicial matters, may be assigned in motion for new trial, though no objection was urged at trial.**

Improper argument, injecting matters not in record, which are inflammatory and prejudicial to rights of losing party before jury, is available to be assigned as error in motion for new trial, though no objection was urged thereto at trial.

**26. Trial ⚖⇒125(4)—Reference in argument that plaintiff was poor man, and architect had broke him, was not proper matter for jury's consideration.**

Where building owner alleged that plaintiff had not completed building according to

specifications, reference in argument that plaintiff was in financial straits, and that architect had broke him, and he stood before jury without financial means, was not proper matter for jury's consideration.

**27. Appeal and error ⟨⟩1060(1)—Parading before jury poverty of client, and seeking verdict by arousing sympathy and appeal to compassion, is reversible error.**

For counsel to parade before jury poverty of his client, and seeking verdict by arousing sympathy and appealing to compassion, is reversible error.

**28. Appeal and error ⟨⟩1060(1)—Trial ⟨⟩120 (1)—Argument that client would not fudge on testimony, and counsel had learned such facts from conference with him, held improper and prejudicial.**

Argument telling jury that client would not fudge on testimony, and that counsel had learned such fact from conference with him, being entirely out of the record, was improper, and prejudicial.

**29. Appeal and error ⟨⟩1060(1)—Trial ⟨⟩124 —Argument seeking to break down testimony of adversary witness by accusing him of evasion of law not in existence held improper and prejudicial.**

Where proper completion of an office building was in issue, reference by contractor's attorney in argument that value was placed on building to escape payment of excess profit tax under a statute which had been repealed was improper and prejudicial as attempt to destroy credibility of witness by accusing him of trying to defraud the government in evasion of law which was not in existence.

**30. Trial ⟨⟩125(2)—Appeal to racial or religious prejudice is not tolerated in trial involving civil rights or liberties.**

Anything that savors of an appeal to racial or religious prejudice is not tolerated in trial involving either civil rights or liberties.

**31. Appeal and error ⟨⟩1170(1)—When prejudicial error is shown, reversal will follow, if there is reasonable doubt of its harmful effect (rule 62A).**

Appellant, in view of rule 62A, need not show that error prejudicial to his rights did have that effect, but, when error, affecting his rights is shown either in instructions or admission of testimony or in argument, reversal follows, if there is reasonable doubt of its harmful effect.

**32. Contracts ⟨⟩322(2)—Evidence of animosity of architect towards contractor was relevant on issue of refusal of certificate of building's completion.**

Where building owner alleged that building was not completed according to plans and specifications, evidence of animosity and ill will of architect towards contractor was relevant to issue of his refusal to give certificate of completion.

**33. Mechanics' liens ⟨⟩51—Parties loaning money to contractor were not entitled to materialman's lien, where there was no testimony that it was used in building.**

Parties loaning to building contractor were not entitled to a materialman's lien, where there was no testimony that contractor used money in completion of building.

**34. Assignments ⟨⟩85—Where various parties claim rights under assignments, assignments rank in order in which they are given.**

Where various parties claim rights by virtue of assignments, the assignments take rank in order in which they are given.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by J. C. Buchanan against George W. Hewitt and others, consolidated with action by the Cary-Schneider Investment Company and others against J. C. Buchanan and others, and in which various lien claimants intervened. From a judgment for plaintiffs Buchanan and others in the consolidated suit, defendants and some of the interveners appeal. Reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, for appellants.

W. B. Hamilton, Burgess, Burgess, Chrestman & Brundidge, Spafford & Loftus, Eugene De Bogory, and T. B. Reese, all of Dallas, for appellees.

PANNILL, C. J. George W. Hewitt contracted with E. H. Cary and Leon Blum to erect an office building in the city of Dallas, now known as the Medical Arts Building, for the contract price of $612,099, excluding certain fixtures. Performance of this contract was guaranteed by bond of the Fidelity & Deposit Company. Hewitt, with the consent of Blum and Cary, contracted with appellee Buchanan to build the structure according to the plans and specifications, a part of Hewitt's contract, with certain additions, for the sum of $565,085. Buchanan's contract was secured by a bond of the Massachusetts Bonding & Insurance Company. Both bonds ran in favor of the subcontractors and materialmen. Blum and Cary assigned their rights in the contracts to Cary-Schneider Investment Company, a corporation. The work was begun by Buchanan under the supervision of the architects, Overbeck & Whitson. A dispute arose over the fifth estimate. C. R. Barglebaugh was substituted for Whitson, and the fifth estimate paid. Buchanan then assigned payments due and to become due to him, to his surety, as collateral for sums advanced by it to complete the building, without change in the status of the parties to the assignment. Later, another assignment was executed by him to interveners, Murphy and Mayfield.

Work was continued until the twelfth es-

timate. To this Buchanan attached a list of extras in his favor. Payments were made on the estimate last referred to, and Buchanan claimed a balance on this estimate and for extras of $26,849.63.' Thereafter the building was completed, and possession taken by Cary-Schneider Investment Company, under an agreement that it was without prejudice to the rights of either party. Overbeck accepted the building as completed according to the contract. Barglebaugh refused to join in this acceptance. Various claims were made by the appellants, Cary-Schneider Investment Company, Hewitt and his surety, of the defects in the work. Buchanan presented a claim for extras in the sum of $88,975.61, in addition to the claim stated above. Cary-Schneider Company and Hewitt entered into a contract wherein it was agreed that their interests did not conflict, and that a settlement should be had between them on the basis of two accounts to be made up, called the Hewitt account and the Cary account, respectively. The Hewitt account was to be made up of the following items: The original contract price, extras furnished by Hewitt, and claims established in favor of Buchanan or his surety for extras furnished by them; all sums paid Hewitt on the contract price or for extras, the amounts established by Cary-Schneider Company against either Hewitt or Buchanan for damages for failure to perform the contract were to be included in the Cary account; the parties owing the difference to pay same; Cary-Schneider to bear all expense of litigation, to pay any judgment obtained by Buchanan against Hewitt, and to be reimbursed for any such payment by Hewitt.

The litigation was begun by Cary-Schneider Company and Hewitt against Buchanan, his surety, subcontractors and materialmen, to wit, Murphy, Mayfield, Vitrolite Construction Company, Blue, Sanford, and Pittsburgh Plate Glass Company, in the Fourteenth district court of Dallas county for damages alleged to be due for unfinished work and for defective work, and the material used, in the sum of $100,000. This claim was based on alleged defects in workmanship and material as to fire doors, wall tile, painting, millwork, plastering, walls being out of line, leaks in the basement, defective cement topping for floors, tile roof of the building, and terra cotta ornaments. Later, Buchanan filed suit against Hewitt and his surety in the Forty-Fourth district court for extras furnished according to his claims as stated above. Cary-Schneider Company had their suit transferred to the Forty-Fourth district court and by motion consolidated with the suit of Buchanan.

The case went to trial with Buchanan and his surety as plaintiffs, Cary-Schneider Company, Hewitt, and his surety as defendants, and the materialmen and subcontractors named above as interveners. The case was submitted on 110 special issues. The jury's findings are in effect (1) that Buchanan erected the building in accordance with the contract; (2) against Cary-Schneider Company's claim as to default and defects in the erection of the building; (3) in favor of Buchanan, his surety, and the subcontractors and materialmen as to extras claimed in the sum of $50,287.88, on which verdict judgment was entered. Cary-Schneider Company, Hewitt, and his surety have appealed, and they will hereafter be referred to as appellants. Buchanan and his surety will be referred to as plaintiffs, and the other parties interveners will be named when necessary.

As stated, the appeal is from the judgment in the consolidated suit. The record is large in volume. The transcript, statement of facts, and briefs run well over 2,000 pages. Appellants present 42 propositions as supporting 84 assignments. Appellees advance 79 counter propositions. This situation demands rigid economy as to the space used in disposing of the points raised. Therefore only such discussion as is absolutely required to make clear the rulings made will occur hereinafter. Further statement needed to render intelligible the propositions under review will be made.

[1] By motions prior to the trial, and after the evidence was closed, appellants sought to occupy the position of plaintiffs in the consolidated suit, but the requests were denied. This action is assigned as error. Reliance is on the claim that the amount due by Buchanan to his assignees exceeded the amount plaintiffs sued for, and that the amount of Buchanan's recovery was less than the amount due to his surety, the Massachusetts Bonding Company. Therefore, Buchanan had no interest in the controversy, and his presence in the suit as plaintiff was a mere camaflouge, designed only to influence the jury and obscure the fact that his surety was the real plaintiff. The authorities cited to support the claim noted are those holding that, after assignment of the claim, only the assignee can sue thereon. Appellees assert that the assignment was collateral, the legal title remaining in Buchanan, and that he could, with the consent of the assignees (all of whom were in court), prosecute the suit, as held in Houston City St. Ry. Co. v. Storrie (Tex. Civ. App.) 44 S. W. 693, American Insurance Union v. Allen (Tex. Civ. App.) 192 S. W. 1087.

The assignees being before the court and recognizing the right of Buchanan to prosecute the suit, he was not without the legal right to do so. Therefore, the question is one of the proper exercise by the trial court of its discretion. The court placed upon Buchanan the burden of proving that he erected the building in accordance with his contract, and that he placed extras in the building as claimed by him. It is not believed that it can be held that the learned trial judge abused his discretion, and the as-

signments in regard to this matter are overruled.

[2] Special issue No. 1 submitted to the jury the question as to whether Buchanan had performed his contract according to its terms and the changes made by the agreement of the parties. In connection with this issue, the jury was instructed, in substance, that the performance submitted meant performance without deviations, omissions, or defects, except such as were so slight as to affect neither the use nor the appearance of the structure, and except such as resulted from a departure by the architects and owners from the plans and specifications, or as resulted from the directions of the architect *or* owner. Subsequent issues submitted performance of the contract in detail as to millwork, paint, plastering, cement, and other alleged defects detailed above. A number of objections were made to issue No. 1; namely, that it constituted a general charge, and that the charge allowed the jury to distinguish between the directions of the owner and those of the architect. It is insisted that the architects had no authority to deviate from the specifications.

Issue No. 1 and the court's instruction in connection therewith, in substance as stated above, submitted the entire case of appellants against Buchanan and his surety. The answer thereto included, not only substantial compliance with the entire contract in every particular, but also each excuse presented by appellants for every defect the jury might find. This is apparent when the evidence is considered. In several instances, the subcontractors admitted that the work done was defective, but excused the defects by reason of the directions of either the architect, Barglebaugh, Dr. Cary or Hewitt. This clearly constituted issue No. 1 a general charge. Ft. Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674; Southland Life Ins. Co. v. Ballew (Tex. Civ. App.) 268 S. W. 1029; Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 559; Lancaster v. Daggett (Tex. Civ. App.) 272 S. W. 340; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 191.

The inclusion by the court in the determination of performance of every excuse urged for failure to perform rendered the submission a general charge. The instruction was thus taken out of the category of definitions. Therefore, cases such as Railway v. Lovett (Tex. Civ. App.) 263 S. W. 644, and Breckenridge v. Hutchens (Tex. Civ. App.) 260 S. W. 684, relied on by plaintiffs, are not applicable.

[3] Appellees offer several reasons as avoiding a reversal on account of the proceeding under review:

First, that it is invited error, because appellants requested the court to give a definition of substantial compliance in effect that performance of the contract meant completion of the building without deviation or defects, except such as are so slight as to in no wise affect the use or appearance thereof.

In Southern Pacific v. Green (Tex. Com. App.) 280 S. W. 198, it is held that, since the statutes now require the court to prepare his charge and deliver it to counsel, counsel to then present objections and special requests, unless the record shows to the contrary, it will be presumed the course directed by the statute was taken, and therefore the doctrine of invited error is no longer applicable, but the question is one of waiver. Tested by this rule, the request cannot be held to be a waiver, because the elements of the instruction which made it a general charge, to wit, the consideration of plaintiffs' excuses for nonperformance, were not included in appellants' request. Ry. Co. v. Eyer, 96 Tex. 72–77, 70 S. W. 529.

[4] The objection made by appellants that the charge was a general one was sufficient, as held in Humble Oil & Refining Co. v. McLean, supra.

Another answer made by appellees is that the contract provided for acceptance by the architects, and that one architect certified that the building had been completed according to the plans and specifications, and the other refused to do so, and there is a finding that the other architect arbitrarily and fraudulently refused to certify that the building had been completed according to plans and specifications, and that, therefore, this finding of arbitrary refusal of the architect amounted, in effect, to a certificate from both architects, and relieved Buchanan of the necessity of proving compliance with his contract, and the issue submitted was wholly immaterial. This position, while ingenuous, is not sound. A finding that the building had been completed according to the plans is a necessary predicate for the finding that the architect arbitrarily refused to give his certificate. The contract provided for final payment upon certificate from the architects. The only effect that this finding of fraud on the part of the architect would have would be to relieve the plaintiffs of the necessity of producing such certificate before demanding final payment. The jury could not find that the architect arbitrarily and fraudulently refused the certificate without having proof that the building had been completed according to the agreement between the parties. 9 C. J. p. 763, § 103.

The doctrine of harmless error is invoked by appellees on the ground that, inasmuch as the court submitted the defendants' various claims in detail, special issue No. 1 became immaterial, and that plaintiffs required no aid therefrom in making out their case. This contention will be disposed of in the examination of the special issue relating to woodwork, painting, millwork, plastering, etc., as obviously for the submission of these issues to avoid the error in the submission of special issue No. 1 they must have been so submitted

as to be free from any reasonable objection. Having determined that special issue No. 1 and the instruction therewith is a general charge, it is unnecessary to discuss in detail other objections, as the issues are not likely to be submitted in the same form on another trial.

[5, 6] There is one objection, however, that should be noticed, and that is: In submitting the question of performance, it was error to permit the jury to excuse the plaintiffs on account of the directions of the architect or owner. The insistence is that the architect had no authority to deviate from the plans and specifications.

It is the general rule that an architect cannot, without the consent of the owner, make any structural change in the building, but the matters in controversy and submitted to the jury do not relate to structural changes, but only to the method in which the work was done and the materials used. Where, as here, the contract gives the power to the architect to determine what was proper workmanship and what was fit material, his directions as to the manner of doing the work and his approval as to the material used are binding on the owner. Boettler v. Tendick, (Tex. Sup.) 11 S W. 499.

[7] As stated above, the defects claimed by appellants in the building in the main related to the painting, millwork, plastering, walls being out of line, defective cement topping on the floors, etc., and each of these matters was submitted in a separate special issue, and in each issue the jury is asked as to whether the work as to each matter submitted was done according to the plans and specifications. The objection is made that the several issues submitted to the jury a question of law and not of fact. A number of authorities are cited announcing the general rule that it is error for the court to submit to the jury, the construction of a written contract. Varnes v. Dean (Tex. Civ. App.) 228 S. W. 1017; Culbertson v. Ashland Cement & Const. Co., 144 Ky. 614, 139 S. W. 792; Alexander v. Tips (Tex. Civ. App.) 268 S. W. 965.

These authorities undoubtedly support appellants' contention that the court should not ask the jury whether or not the work had been done or whether performance had been had according to a written contract introduced in evidence. In the instant case, the contract and plans and specifications cover some 30 or 40 pages of the statement of facts. These documents abound in technical terms. The evidence from experts called by the respective sides who are familiar with such terms and who had examined the work was sharply conflicting, and such a course as adopted in this case is not to be commended. The submission should have followed the testimony introduced by appellants as to the specific defects claimed.

[8, 9] Appellees seek to avoid a reversal under the assignments raising the matters here discussed by reason of such decisions as Kettler Brass Mfg. Co. v. O'Neil, 57 Tex. Civ. App. 568, 122 S. W. 900; Hazelton v. Holt (Tex. Civ. App.) 285 S. W. 1115; and Baccaratt v. Beaumont S. L. & W. Ry. Co. (Tex. Civ. App.) 285 S. W. 857.

The rule announced in these cases has been one of frequent application, and is that, where an objection is made to a particular matter occurring in the court's charge, it will not afford ground for reversal, even if erroneous, where the same matter occurs in other portions of the charge, and is not objected to. Therefore, because appellants did not lodge the same objection to special issue No. 1 as was made to the issues now being considered, that error was harmless. But appellants did object to special issue No. 1, and, as we think, made a valid objection thereto. It would have been futile for them to have urged other objections when they made a perfectly good one which was overruled by the trial court.

Security Banking & Inv. Co. v. Flanagan (Tex. Civ. App.) 241 S. W. 702, is relied on. This authority does not encourage the practice of referring the jury to a written contract and permitting its construction by it, but holds that, inasmuch as the contract was short and simple and unequivocal in its terms, no injury accrued.

It is further urged that, inasmuch as the court submitted appellants' various claims in detail, special issue No. 1 became immaterial, and it is now claimed that, even if the separate submissions as the various defects claimed by appellants were incorrect, the error is cured because appellants' whole case was submitted in special issue No. 1. This appears to us to be arguing in a circle. To urge that the erroneous submission of special issue No. 1 is rendered harmless by reason of the separate submission of defendants' claims, and then claim that the error in the separate submissions of the alleged defects in the building is cured by the submission of special issue No. 1, which is erroneous, is apparently carrying the doctrine of harmless error to the 'nth degree and "reductio ad absurdum."

[10, 11] In submitting plaintiffs' claim for extras as to lathe and plaster, painting and millwork, the jury were interrogated as to whether the extras were furnished by plaintiffs as alleged by them and as shown by plaintiffs' Exhibit E; which was attached to his petition. The exhibit comprises some thirty odd items. Most of these thirty items were sustained by testimony introduced by the plaintiff, but in one important particular there appears to be no evidence to sustain plaintiffs' claim for several thousand feet of extra picture mold, which was claimed by him in Exhibit E. There are many cases which discuss the propriety of the practice of referring the jury to the pleadings of the parties. In a number of cases, such action on the part of the court has resulted in reversals

of the judgments. In others, the court has refused to reverse therefor. It is the general rule that it is not proper to refer the jury to the pleadings of a party in order to ascertain the matters of fact to be decided, and it is also the general rule that, where some of the matters pleaded are not supported by evidence, the matter will constitute reversible error. In such case the charge is subject to the objection that, by submitting an issue upon which there is no evidence, it assumes that there is some, and, by leaving the jury to decide whether the issue is raised or not raised, it affords a very grave likelihood of confusion among them. Egan v. Egan (Tex. Civ. App.) 235 S. W. 659; Estep v. Bunk Bratton, 298 S. W. 145, by this court.

[12] The contract provided that the contractor should make no claim for additional work, unless it was done in pursuance to an order from the architect and approved by the owners, and notice of all claims should be made to the architect in writing within ten days from the beginning of such work. To avoid this provision, the plaintiffs pleaded it was agreed between the owners, architects, and the contractor that he should proceed with the work on the building, and, upon its completion, same should be charged as extras in connection with the original plans without the necessity of written orders for extras, the same being waived, and that plaintiff would be paid for all extras wrought by him in the building. These allegations were supported by proof. A committee was appointed, representing the various parties at interest. This committee checked the building for extra plaster and picture mold. On the trial, in respect to picture mold and plaster, the plaintiffs in some respects relied upon the committee's check, but, without any basis for such action in the pleading, disregarded the committee's finding as to matters not in Buchanan's favor, and substituted the testimony of Buchanan himself therefor. Complaint is made of this matter, and we think it proper to call it to the trial court's attention. The plaintiffs could not rely on the committee's finding in part to establish their case and ignore it in part without some sort of a pleading raising an issue as to the correctness of the finding of the committee. The committee, when agreed to by the respective parties, probably became the agents of the parties to determine the matter in dispute, and the report of the committee, if approved in part by one of the parties, would be binding as a whole, unless attacked. In view of another trial, further discussion of the sufficiency of the testimony to support the findings of extra lathe and plaster will be omitted.

Further complaint is made that the jury's finding in favor of plaintiffs on items for extra lathe, plaster, and picture mold is supported only by hearsay testimony, and this is insufficient to support a verdict under the rule announced in Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, and later cases following it. It is not necessary to decide whether a reversal should follow on account of these matters, but, under the recent decision of Housley v. Strawn Merchandise Co. (Tex. Com. App.) 291 S. W. 864, a good deal of the plaintiff Buchanan's testimony was not admissible, and the plaintiffs will naturally govern themselves accordingly on another trial.

[13] On another trial it is suggested that special issues as to whether the contractor was guilty of negligence should not be submitted. Plaintiffs allege compliance with the contract, and negligence has no place in the case. Wells v. Mason (Tex. Civ. App.) 258 S. W. 914.

It is unnecessary to decide whether these matters constitute reversible error, inasmuch as it will be later shown that there are some matters which affect the whole case and which will require a new trial.

[14] In the course of the work, a change was made in the specification for the topping for the cement floors. After the floors were completed, various defects developed therein. These defects were involved in the appellants' claim for damages. Buchanan testified that he informed the owner and the architect that the change made required too rich a mixture of cement, which would cause the top of the floors to crack, and that he protested against the quantity of cement that the architects ordered. This issue was submitted to the jury, and they found that the plaintiff did protest. Upon another trial, this issue should not be submitted. There is no question but that the changed specifications were adopted, and the sole question for the jury to determine is whether the change in the specifications as ordered by the architect was responsible for the defects in the cement floor. After the floor toppings for the cement floors were put down, a number of said floors were condemned by the architect, Barglebaugh, and, under his direction, were torn up and relaid. The court interrogated the jury as to whether Buchanan put the topping on the floor in accordance with the specifications, to which the jury returned an affirmative answer. The jury then found, in response to other questions, that the work was torn up under the order of Barglebaugh, with the consent of the owners, and without the consent of the contractor and found the extra cost of this work to be $11,110.

[15] It is insisted that the jury's answer is without proper basis in the testimony because there was no showing that Barglebaugh acted fraudulently or arbitrarily in the matter, and, in the absence of such proof under the contract, his decision controlled. The other architect, Overbeck, was called as a witness by the plaintiffs, and he agreed that some of the floor toppings were defective, and

concurred with Barglebaugh in ordering a replacement. Appellants, therefore, claim that the finding of the jury allowing the entire claim for all the work replaced is excessive. Plaintiffs' reply is that the contract required the architects to give written notice to the owner before beginning the work of removing any material or workmanship condemned, and that this was not shown. Appellants in turn retort that the duty devolved upon the appellees to show that the action of the architects was without warrant in the contract, and, having in view another trial, it is suggested that it will probably be necessary for the plaintiffs to show that the acts of the architects were without warrant in the contract. Travelers' Ins. Co. v. Harris (Tex. Com. App.) 212 S. W. 933.

[16] Considerable space in the briefs of both parties is devoted to a discussion of the item allowed plaintiffs for extra cost in laying the kind of brick selected. Some twelve special issues were submitted to determine the brick controversy. The brick specifications are:

"The outside of all walls where indicated 'face brick' except where stone is indicated, shall be faced with an approved face brick costing $27.00 per thousand, F. O. B. Dallas, Texas. This price is a basis on which to figure and in case brick is selected to cost less than this amount, the owner is to be credited with the difference, in case the brick selected should cost more, owner will pay additional."

The owners selected a brick known as Kittanning brick, shown to be what is known as a vitrified brick, practically impervious to moisture, slightly smaller than the average porous brick on account of having been subjected to heat for a much longer time. This brick cost $55 per thousand, and it was not practical to lay it in a half inch joint of mortar, and under no circumstances could it be successfully laid after having been dipped in a soap solution, nor, in fact, after being simply wetted.

The specification then provided that brick should be laid in a one-half inch joint of mortar and be wetted before being brought to the scaffold and wetted again before being placed in the walls, and, further, that the exposed surface of the face brick should be dipped in a soap solution prior to laying. By proper pleading the plaintiff raised the issues shown by the testimony detailed in discussing this matter.

The plaintiffs' contention, which was adopted by the jury, was that the brick actually selected was of an entirely different kind from the class described in the contract as a basis on which to figure, and that the brick selected was more difficult and expensive to lay, and that the owners agreed with the brick contractor to pay him the reasonable extra cost of laying Kittanning brick, and that the extra cost of laying such brick

was $7 per thousand, and that 21,000 more Kittanning brick were required than would have been required had the kind of brick described in the contract been selected. The plaintiffs' right to recover the sum awarded by the special finding adverted to is vigorously challenged by the appellants, first as to plaintiffs' right to recover anything on this item, and, if that view be not sustained, the manner of the submission, in that the submission permitted the jury to interpret the contract and assumes that a substitution was made. It is believed that the court was warranted in assuming that a different character of brick was selected from that described in the contract. The court, in submitting the issues, used the words "specified in the contract." It is true that no particular brick was specified in the contract, but a certain kind or character of brick was described in the contract as a basis for compensation to the contractor. From what has been said above, it is obvious that the brick actually selected was not the brick actually described and made the basis for the contract price.

[17, 18] The view is expressed that the contract is susceptible to the construction that, if brick different from that described in the contract was selected, and thereby additional expense was put upon the contractor, a recovery could be had under the agreement. The evidence shows that this is the construction put on it by the parties. Under this view, all errors committed by the court in relation to this issue would become immaterial. It is not believed that there is any error in the alleged assumption by the court that Kittanning brick was different from the brick described in the contract. The brick there described was to cost $27 per thousand, to be dipped in a soap solution, and laid in a one-half inch mortar joint. It is clear that Kittanning brick could not be handled in this manner, but, if the contract was not susceptible to the construction that the contractor would be reimbursed for additional labor involved in laying Kittanning brick, then certainly that part of it relating to the amount additional to be paid, if a more expensive brick were selected, was ambiguous, and proof was admissible to show the construction the parties themselves put on it. The finding of the jury and the plaintiffs' testimony clearly show that it was understood by all parties that the selection of Kittanning brick would involve additional expense, for which he should be paid, and that appellants agreed to pay the reasonable extra cost incurred in laying Kittanning brick. This ambiguity would be a sufficient consideration to support appellants' promise to Hudson, the brick contractor, to pay the cost of the extra labor required in laying Kittanning brick. Brenneman v. Bush (Tex. Civ. App.) 30 S. W. 699; Barrett v. Featherston, 89 Tex. 567, 35 S. W. 12, 36 S. W. 245; Feigel-

son v. Brown (Tex. Civ. App.) 126 S. W. 17; Butcher v. Smith (Tex. Civ. App.) 195 S. W. 1180; Wood v. City of Fort Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416.

[19] On cross-examination of appellants' witnesses, a number of whom were tenants occupying the building, appellees proved the amount of rent the tenants were paying to the owner, and, in many instances, these tenants were paying the rent under a contract that they made with the owner before the building was completed, and, on cross-examination of Wooley, plaintiffs' building manager, appellees proved the amount of rent which was being charged to, and collected from, each tenant. Objection was made to all this testimony that it was irrelevant, immaterial, and calculated to prejudice the jury. As shown above, it appears that, when the owners took possession of the building, they did so under a written agreement with Buchanan that their act in so doing should not prejudice the rights of either party. Hence their possession was not a waiver of defects in the building, and the testimony was not admissible on this issue, nor was it admissible to show that the building was not defective, either in workmanship or material. McBurnett et al. v. Smith & McCallin (Tex. Civ. App.) 286 S. W. 603; Central Mantel Co. v. Thaler, 133 Mo. App. 86, 113 S. W. 220; Walter v. Huggins, 164 Mo. App. 69, 148 S. W. 148; Mitchell v. Williams, 80 App. Div. 527, 80 N. Y. S. 864; Lindemann v. Kopczynski, 155 Wis. 164, 144 N. W. 196.

[20] Appellants object to the consideration of this bill because it was a general one and includes all the testimony of different witnesses in one bill. Under the decision in Fort Worth & D. G. Ry. Co. v. Smithers (Tex. Civ. App.) 249 S. W. 291, the bill is probably sufficient, but, even if it was not, attention is called to this matter, so that on another trial this testimony may not be admitted over objection, as it is not believed that testimony that a particular tenant is occupying a building under a contract is admissible, either to show that the contractor did not use the character of workmanship and material required by the contract, or as affecting the credibility of the witness.

[21, 22] Appellees claim that they had the right to cross-examine appellants' tenants who testified as to the various defects in the building as to the amount of rent they were paying, as affecting their credibility. We do not understand how proof that a tenant was paying rent under a contract entered into by him before the building was completed could in any manner affect his credibility. Such testimony might tend to show that the particular room of the building occupied by the tenant had a rental value equal to the contract price, but this is not a matter which would affect appellants' right to recover from Buchanan and his surety the proper amount

of damages for failure to comply with the contract. It is further urged by appellees that appellants put in issue the value of the building, and that its rental value was therefore relevant, in order to show the value of the structure, but this would not permit testimony of specific contracts, but only testimony as to the rental value of the building as a whole.

[23] Testimony as to the reputation of subcontractors of Buchanan is not admissible, and, if objected to upon another trial, should be excluded. Hunter v. State, 54 Tex. Cr. R. 224, 114 S. W. 124, 130 Am. St. Rep. 887; Tarwater v. Donley County State Bank (Tex. Civ. App.) 277 S. W. 176; Mertz v. Detweiler, 8 Watts & S. (Pa.) 376; Hays v. Millar, 77 Pa. 238, 18 Am. Rep. 445; Cannon v. Hunt, 116 Ga. 452, 42 S. E. 735.

Appellees call our attention to the cases of Wells Fargo v. Benjamin (Tex. Civ. App.) 165 S. W. 126, Howell v. West (Tex. Civ. App.) 227 S. W. 251, and Ry. Co. v. Fielder (Tex. Civ. App.) 163 S. W. 606, holding that the erroneous admission of evidence as to the reputation of a party to a civil suit is harmless error. It is not necessary to decide whether such testimony alone should reverse the judgment in this case, but it will be noted that, in the three decisions referred to, other grounds were given for the refusal to sustain the assignments as to the admission of such testimony besides that of harmless error, and, since these decisions were written, the Supreme Court has construed rule 62A to have a decidedly different effect from that given it in the decisions referred to, as will be shown somewhat more in detail hereinafter. At any rate, there is no basis shown in this record for the admission of such testimony, and upon another trial it should be excluded.

[24] In the judgment foreclosing the materialmen's liens on appellants' property, the entire lots are described as lying 181.5 feet on Pacific avenue, and about 204 feet along Masten street. The general plans provided for a building with dimensions less than the dimensions of the entire property foreclosed on, leaving the building occupying part of the lot described with a strip on the west of the property 49 by 53 feet. Complaint is made of the judgment in this respect. The statute provides that materialmen shall have a lien on the building and the lot or lots of land necessarily connected therewith. The court, however, followed the pleadings of appellants, and described the lots exactly as described in appellants' answer and cross-action. There is no proof as to whether or not the extra strip of land was necessarily connected with the building. Attention is called to this, so that, at a subsequent trial, whatever judgment is entered may conform to the pleading of the parties and the proof under the statute.

[25-27] A number of assignments, some fourteen of them in fact, complain of the argument of counsel. Most of the complaints are unsubstantial, and need not be detailed. There are several, however, which are of such a character that they would alone work a reversal of the case. Those discussed were not objected to on the trial, but were assigned as error in the motion for a new trial. It appears that, under recent authorities, improper argument, injecting into the case matters de hors the record which are inflammatory and calculated to prejudice the rights of the losing parties before the jury, are available to be assigned as error in the motion for new trial the same as though objection had been urged thereto at the trial. Different counsel for the appellees repeatedly referred to the fact that plaintiff Buchanan was in financial straits, and that he was a poor man, and that Barglebaugh, the architect, had broke him, and that he stood before the jury as a man without financial means. It is true that there was evidence in the record to this effect, but its reception was permitted by the court as bearing on incidental issues, and Buchanan's financial condition was not a proper matter to be considered by the jury in deciding the case. It has been repeatedly held to be reversible error for counsel to parade before the jury the poverty of his client and seek to win a verdict by arousing the sympathy and appealing to the compassion of those whose decisions will determine the controverted issues of fact. Smith v. State, 160 Ark. 178, 254 S. W. 463; Dallas Consolidated Elec. Steel Ry. Co. v. Black, 40 Tex. Civ. App. 415, 89 S. W. 1089.

[28] In his closing argument to the jury, counsel for appellee Buchanan told the jury that his client, Buchanan, would not fudge a hair's breadth on the testimony or evidence, and that counsel had learned this fact by being in conference with him in this lawsuit. This argument was entirely out of the record, improper, and calculated to injure the appellants' rights before the jury. If Buchanan's reputation for truth and veracity had been put in issue before the jury (which it was not), testimony of this kind would not have been receivable. This argument also appeals to the popular notion that attorneys require their clients to disclose to them all the facts in the case, and to confess when in fact in the wrong, and this statement was calculated to induce the average juror to believe that counsel had put his client through the popularly conceived legal confessional, that his client had stood the acid test, and was therefore entitled to absolute credence about everything he swore. T. & N. O. Ry. Co. v. Harrington, 44 Tex. Civ. App. 386, 98 S. W. 656.

[29] One of the appellants' witnesses testified that the building stood on appellants' books at a valuation of $1,250,000. Counsel for appellees stated in his argument that this valuation was fictitious, and was placed at this fictitious valuation by appellants in order to escape the payment of the excess profits tax. The date when the appellants took possession of the building was subsequent to the time when this tax was repealed. See Revenue Act 1921, title 3, § 300. (Comp. St. § 6336⅞₆a.) It is improper for counsel to seek to break down the testimony of one of appellants' witnesses and destroy his credibility by accusing him of trying to defraud his government in the evasion of a supposed law that did not exist. This argument was well calculated to injure appellants' case. Dr. Cary was a witness on many material points, and it was necessary to discredit his testimony for the appellees to recover on many of the items and to establish their claim of compliance with the contract. This argument of counsel assailed his personal and business integrity, and was without foundation or justification.

[30] Serious complaint is made of the construction by counsel in his argument to the jury of the contract referred to above between Cary-Schneider Investment Company and Hewitt. Counsel construed the contract as being very unfavorable to Hewitt, and, in connection therewith, told a Bible story to illustrate the situation Hewitt was placed in by reason of having entered into the agreement noted. Upon another trial it is suggested that counsel will refrain from construing the contract as being unfavorable to Hewitt. It does not appear to be so. As viewed here, the contract is entirely favorable to him. Of course, the plaintiffs are entitled to whatever benefit that they may derive from any argument as to the motives of Cary-Schneider Investment Company to make such a favorable contract with Hewitt. We do not think there is any merit in the complaints appellants make as to the Bible stories related by counsel nor the jokes narrated as illustrating the points in counsel's argument. It does not appear that such jokes or Bible narratives are calculated to arouse either racial or religious prejudice. It is needless to state that anything that savors of an appeal to racial or religious prejudice will not be tolerated in the trial of a case involving either the civil rights or the liberties of citizens. Such appeals cannot be too strongly condemned nor reprobated, but it is not believed that the argument was calculated to appeal to such prejudices. It is believed that, under the rule announced in Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765, Emberlin v. Wichita Falls Ry. Co. (Tex. Com. App.) 284 S. W. 539, and Hubb-Diggs v. Bell (Tex. Com. App.) 293 S. W. 808, the argument in the respects pointed out above constitutes reversible error when assigned in the motion for a new trial. Davis v. Bill (Tex. Civ. App.) 271 S. W. 281; Wichita Falls Ry. Co. v. Emberlin (Tex. Civ.

App.) 274 S. W. 991; Motley v. Lawrence (Tex. Civ. App.) 283 S. W. 699.

In Hubb-Diggs v. Bell, supra, the opinion of the Commission of Appeals was adopted by the Supreme Court, and the holding in the case of Bell v. Blackwell is expressly approved and stated to be that, where improper argument has been indulged in by an attorney for his adversary, the complaining party is entitled to reversal of an adverse judgment, if, under all the circumstances, there is any reasonable doubt of the harmful effect of such argument, and that whether there is such reasonable doubt is a question of law, and not one of fact.

[31] The appellees, in response to almost every assignment, have, as stated by counsel for appellants, "leaned heavily upon the arm of rule 62A," and have cited many cases by the Court of Civil Appeals applying said rule, in order to avoid reversal, due to erroneous charges, the admission of irrelevant and prejudicial testimony, and the improper argument of counsel. It is true that this rule has been construed as prohibiting reversals where the error assigned was not shown to have resulted in injury to the complaining party. The decisions in Bell v. Blackwell, Hubb-Diggs v. Bell, supra, Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425, and Bain Peanut Co. v. Pinson et al. (Tex. Com. App.) 294 S. W. 536, very much modify the rule announced in the decisions of the Courts of Civil Appeals cited by appellees, and the burden is no longer on appellant to show that an error calculated to prejudice his rights did, in fact, have that effect, but that, when an error calculated to affect the rights of the complaining party is shown, either in an instruction to the jury, the admission of testimony, or in argument, that a reversal will follow, if there is any reasonable doubt of its harmful effect.

In Bain Peanut Co. v. Pinson, this court refused to reverse on the ground of erroneous admission of hearsay testimony given by one of the plaintiffs in the case. The record in that case showed a recovery for a far less sum than the jury could have awarded the plaintiffs under their testimony. There was no showing of prejudice, except that which would probably ensue in the admission of testimony which might be appropriated to the prejudice of the losing parties. The Supreme Court held we were in error in holding the error harmless. The special verdict in this case found in favor of appellees on every contested issue submitted to them, except one, although the jury did not in every instance allow all appellees claimed. In response to one issue, the jury returned an excessive verdict of $7,500 as to one item, which amount was remitted. We have found that their verdict in response to special issue No. 19 is excessive to the amount of several hundred dollars. It is to be regretted that rule 62A cannot be applied as a panacea for all the legal ills and afflictions appearing in the record.

[32] Evidence of animosity and ill will of the architect, Barglebaugh, towards Buchanan was relevant to the issue of his refusal to give a certificate of completion. O'Neil v. Wills Point Bank, 67 Tex. 36, 2 S. W. 754.

[33] The only other matter necessary to be considered is the appeal of Murphy and Mayfield from that part of the judgment denying them a recovery on their intervention seeking to have established a materialmen's lien for money loaned by them to the contractor which he represented was to be used in the building. There is no testimony that such money was in fact so used, but, if it had been, said interveners would not be entitled to the recovery sought. Gaylord v. Loughridge, 50 Tex. 573; First Nat. Bank of Muscogee v. Campbell, 24 Tex. Civ. App. 160, 58 S. W. 628; Eastern Texas Ry. Co. v. Foley, 30 Tex. Civ. App. 129, 69 S. W. 1030; Lion Bonding Co. v. First State Bank of Paris (Tex. Civ. App.) 194 S. W. 1012.

[34] The other contention by interveners is that, having advanced money to Buchanan for the purpose of enabling him to comply with his contract on which the appellee Massachusetts Bonding & Investment Company was surety, said interveners had an equitable lien upon all unpaid moneys arising out of said contract superior to any lien or assignment given by Buchanan to his said surety, even though said assignment to his surety was prior in point of time. It seems to be well settled that, where various parties claim rights by virtue of assignments, the assignments will take rank in the order in which they are given. Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Youngberg v. El Paso Brick Co. (Tex. Civ. App.) 155 S. W. 715; Hess & Skinner Eng. Co. v. Turney, 110 Tex. 148, 216 S. W. 621; O'Neil Engineering Co. v. First Nat. Bk. of Paris (Tex. Com. App.) 222 S. W. 1091; Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Joseph Labbe v. Isaac R. Bernard, 196 Mass. 551, 82 N. E. 688, 14 L. R. A. (N. S.) 457; Harris County v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467.

Other assignments are not material, but have been considered and are overruled.

For the reasons indicated, the judgment of the trial court is reversed, and the cause remanded.